# KRUEGER *v.* UNITED STATES.

## APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH CIRCUIT.

No. 111. Submitted December 20, 1917.—Decided March 4, 1918.

Land, part of an odd-numbered section within the primary limits, but covered by a valid preëmption filing at the date of the definite location of the right of way, was excepted from the grant made to the Denver Pacific Railway & Telegraph Company by the Acts of July 1, 1862, c. 120, 12 Stat. 489; and March 3, 1869, c. 127, 15 Stat. 324. *Kansas Pacific Ry. Co.* v. *Dunmeyer,* 113 U. S. 629.

Upon the facts as found, *held,* that one who under a deed of the Denver Pacific Railway & Telegraph Company and through mesne con-

veyances came into, and retained, possession of a parcel of land, which, because of a preëmption filing, was excepted from the grant made to that company (*supra*), was in a position to acquire full title by purchase under the Adjustment Act of March 3, 1887, c. 376, 24 Stat. 556, § 5; and the regulations of the Land Department relative thereto.

One who purchases under a receiver's receipt, issued upon a soldiers' additional homestead entry, land, which is in the actual possession of another claiming from another source under recorded deeds, is constructively notified by such possession and records of that other's claim and of that other's rights as so revealed; and also—through the receiver's receipt—of the origin of his own title and therein of the fact that it was procured by means of affidavits falsely stating that the land was unoccupied, unimproved and unappropriated.

The defense of *bona fide* purchase is affirmative; the burden of establishing it rests upon the party who makes it, in a suit by the United States to cancel a patent for fraud.

228 Fed. Rep. 97, affirmed.

THE case is stated in the opinion.

*Mr. William V. Hodges* and *Mr. Richard B. Scandrett, Jr.,* for appellant:

A purchaser under a patent is not required to go behind the patent. *United States* v. *Laam*, 149 Fed. Rep. 581. Mrs. Krueger was not bound to hunt for grounds of doubt, and in order to set the patent aside the United States must charge her with notice of the original fraud. *United States* v. *Detroit Timber & Lumber Co.*, 131 Fed. Rep. 668; *United States* v. *Clark*, 200 U. S. 601, 607, 609. If Benson or his tenants were actually in possession of the land at the time of the purchase by Mrs. Krueger, it may be conceded that she is chargeable with notice of such possession, but there is nothing in that circumstance or any inquiry which might be induced thereby, which would give her notice of the alleged fraud upon the United States. Such possession was only notice to Mrs. Krueger of the extent and character of the claim of the possessor himself, not of defects in the title of her predecessor in title. *Suiter*

· v. *Turner*, 10 Iowa, 517, 524; 2 Minor, Real Property, § 1413; 2 Pomeroy Eq. Jur., § 615. This rule of law implying notice from an adverse possession was invented in order to protect tenants of a grantor who conveyed property without actually informing the grantees of the leases, or to protect owners of property who had failed to register their deeds. In the case of possession adverse to a grantor, such possession only charges the grantee with knowledge similar to that which he would have had if the adverse possessor had not neglected to register his title. Any right which Benson had was certainly not derived through or from Mrs. Krueger's grantor, and it is submitted that actual notice of Benson's title is of no materiality, for the simple reason that he had no valid title to record. *Burt* v. *Baldwin*, 8 Nebraska, 487, 494; *Roll* v. *Rea*, 50 N. J. L. 264; *Munn* v. *Bergess*, 70 Illinois, 604, 614, 615; *Lloyds* v. *Karnes*, 45 Illinois, 62, 72. She was justified in assuming that the duly executed instrument of the United States was valid, and, since she was an innocent purchaser of such patent for a valuable consideration, the voidable title in the hands of her predecessors becomes absolute in her. *Perkins* v. *Hays*, 1 Cooke (Tenn.), 163, 168, 174; *Phillips* v. *Buchanan Lumber Co.*, 151 N. Car. 519. The most notice that knowledge of any possession by Benson could impute to Mrs. Krueger would be of the facts or circumstances that she might have learned by making inquiry of Benson. *Losey* v. *Simpson*, 11 N. J. Eq. 246, 255; *Runyan* v. *Snyder*, 45 Colorado, 156, 162. So far as she could have learned by inquiry, he was a trespasser and had no rights whatever, and there is no evidence to show that Benson knew that a fraudulent affidavit had been made at the time Mrs. Krueger purchased the land.

The matter to be determined is whether the legal title should remain in Mrs. Krueger, or the patent be canceled and title restored to the United States—not whether the

legal title should go to a third party. To accomplish this result, the Government must establish the fraud by clear and convincing proof. It must be conceded that she had no actual knowledge of the fraud, and there is nothing in the record to indicate that the most diligent inquiries made to Benson himself would have divulged the fact that the patent had been procured by means of false affidavits.

Since there is nothing in the record to show that Langston, the purchaser from the railroad company, was a citizen of the United States, or had declared his intention to become such, or was a *bona fide* purchaser, as provided by § 5 of the Act of March 3, 1887, 24 Stat. 556, the record of Benson's title and his occupancy did not charge Mrs. Krueger with constructive notice of any right of Benson, because the absence of those circumstances prevents Benson from having any valid interest in the said land. *Ramsey* v. *Tacoma Land Co.*, 196 U. S. 360, 362; *Miller* v. *Tacoma Land Co.*, 29 L. D. 633, 634; *Gertgens* v. *O'Connor*, 191 U. S. 237, 241. It is not disputed that the deed from the railroad to Langston was made on April 5, 1871, at a time when the Woodward filing was valid, and at that time the railroad had no right, title or interest in the land. To be a *bona fide* purchaser within the purview of the act, it is necessary that the purchaser acquire the lands at a time when they are "public lands in the statutory sense and free from individual or other claims." *United States* v. *Winona R. R. Co.*, 165 U. S. 463, 481.

The original affidavits to the effect that the land was not already occupied in reliance upon which the patent was issued were not false, because a mere trespasser is not an "adverse occupant" within the meaning of the Land Office requirement.

*Mr. Assistant Attorney General Kearful* for the United States.

MR. JUSTICE DAY delivered the opinion of the court.

This is an appeal from a decree of the United States Circuit Court of Appeals for the Eighth Circuit reversing a decree of the District Court of Colorado which dismissed a bill of complaint filed by the United States against Emma T. Krueger for the cancellation of a certain patent upon public lands in Colorado.

The Government alleged in its bill that the land, eighty acres, patented to William E. Moses June 6, 1910, upon a soldiers' additional homestead entry (Rev. Stats., §§ 2306, 2307; 28 Stat. 397), had been secured by means of false affidavits, one by the entryman, Moses, who had made oath that the land was unoccupied, unimproved, and unappropriated by any person other than himself; the other by John A. McIntyre that the land was not in any manner occupied adversely to the selector, whereas in truth and in fact the land had been for several years previously in the open and notorious possession of one P. C. Benson under title deraigned from the Denver Pacific Railway & Telegraph Company under a land grant of Congress made July 1, 1862. It was also charged that the fraud was perpetrated by agreement between Moses, the entryman, and one C. M. Krueger, the husband of the defendant, Emma T. Krueger. It is charged in the bill that Mrs. Krueger took the conveyance through Moses and her husband with notice of the fraud and without consideration.

Upon issue joined, and the allegation of the answer that the defendant was a purchaser in good faith without notice of any fraud, the District Court found that the patent had been obtained by fraud, but that Mrs. Krueger was a *bona fide* purchaser without notice, and as such entitled to hold the land. The Court of Appeals took the same view of the evidence as to the fraudulent manner in which the land was acquired, and reached the conclu-

sion that the patent should be set aside for fraud committed against the United States unless the defendant had shown that she was an innocent purchaser without notice.

With some hesitation the Circuit Court of Appeals reached the conclusion that Mrs. Krueger at the time she purchased the land must be held to have had constructive notice of facts which, if investigated, would have led her to the knowledge of the fraud, and that she was not entitled as a *bona fide* purchaser to hold the land as against the Government. (228 Fed. Rep. 97.)

It was stipulated by the parties for the purposes of the trial as follows:

"By Act of Congress of July 2, [1] 1862 (12 Stat. 489), Congress granted to the Leavenworth, Pawnee and Western Railroad Company, a right of way over certain public lands, and also certain public lands to aid in the construction of said railroad. That under and by virtue of a certain Act of Congress of March 3, 1869, the Denver Pacific Railway and Telegraph Company became the owner of and entitled to all the rights and benefits so granted and conferred by said Act of Congress of July 2, [1] 1862, and said company selected and definitely located its said right of way, on August 20, 1869, and so selected and definitely located and fixed its said right of way as to bring the lands involved in this suit within the primary limits of said grant. On April 13, 1866, Robert W. Woodward filed a certain valid pre-emption declaratory statement, numbered 2094, as provided for in the Act of Congress dated September 4, 1841 (5 Stat. 455), for the lands hereinabove described (unoffered lands), upon which final proof and payment was never made, that said declaratory statement was a valid and subsisting claim on August 20, 1869, and all rights under and by virtue of said pre-emption filing of said Woodward expired by operation of law on July 14, 1872, up to which date said filing was a valid and subsisting filing."

The land was part of one of the odd-numbered sections named in the land grant and was opposite the constructed part of the road. April 5, 1871, the Denver Pacific Railway & Telegraph Company sold and conveyed the land to one James Langston. Thence by mesne conveyances the land passed to Perry C. Benson, April 6, 1904.

The pendency of Woodward's filing prevented the title from vesting in the railroad company, for it caused the land to be excepted from the grant. *Kansas Pacific Ry. Co.* v. *Dunmeyer*, 113 U. S. 629.

A copy of the abstract of title showing the chain of title from the Denver Pacific Railway & Telegraph Company to Perry C. Benson was stipulated into the record; the abstract also showing the chain of title to and including the purchase by Mrs. Krueger of one-half interest in the land from C. M. Krueger.

Benson paid $1,375.00 for the land, and both courts found that he was and continued to be in possession of the land with the title of record as stated, and that Mrs. Krueger would be held to have knowledge of his rights, certainly as between herself and Benson. We have no doubt from the facts found that Benson had such possession and occupation of the premises as gave at least constructive notice of the nature and extent of his title. Under the Act of March 3, 1887, 24 Stat. 556, § 5, and the regulations of the Land Department, he would have been entitled upon hearing in the Department to purchase the lands and acquire full title thereto upon complying with the statute. Section 5 of the act, and the regulations of the Land Department are given in the margin.[1]

---

[1] Sec. 5. That where any said company shall have sold to citizens of the United States, or to persons who have declared their intention to become such citizens, as a part of its grant, lands not conveyed to or for the use of such company, said lands being the numbered sections prescribed in the grant, and being coterminous with the constructed parts of said road, and where the lands so sold are for any

The turning question in the case is: Was Mrs. Krueger a *bona fide* purchaser in such sense that she can hold the land notwithstanding the fraudulent manner in which it was acquired by the entryman Moses for the benefit of Krueger. That Krueger had actual knowledge of Benson's claim to the premises admits of no doubt. As early as August 3, 1907, Krueger wrote to Benson:

"Upon a search of the records, I find that you are the present owner of the W/2NE/4, Sec. 17, Tp. 5 N, R 69 West of the 6th P. M. [the tract in controversy], and that the title thereto is imperfect. If you are sufficiently interested, I would be pleased to correspond with you relative to the matter and assist you in curing the defect.

"My charges will be reasonable."

Krueger had been chief clerk of the United States Land Office at Denver until February 12, 1907, and thereafter practiced as an attorney in land and mining matters at Denver. Moses procured the soldier's additional homestead right upon which the entry was made, and made the entry at the request of Krueger who had bought the soldiers' additional right from Moses for $780.00. Moses deeded the land to Krueger, and never claimed any interest in it. The Land Department's regulations required

---

reason excepted from the operation of the grant to said company, it shall be lawful for the bona fide purchaser thereof from said company to make payment to the United States for said lands at the ordinary Government price for like lands, and thereupon patents shall issue therefor to the said bona fide purchaser, his heirs or assigns.

Regulations promulgated by the Land Department on February 13, 1889, provided with reference to § 5 (8 L. D. 348, 352):

"No entry will be allowed under this section until it shall have been finally determined by this Department that the land was excepted from the grant."

And again on August 30, 1890 (11 L. D. 229):

"If the applicant is not the original purchaser from the company it is immaterial what the qualifications of his immediate grantor or the intervening purchasers may have been."

an affidavit that the land located or selected was not in any manner occupied adversely to the locator or selector. Moses obtained a receiver's receipt upon April 8, 1910; and conveyed by deed to Krueger April 15, 1910. On April 22, 1910, Krueger conveyed to Mrs. Krueger and Mrs. McIntyre, the wife of one who had made a corroborating affidavit also containing the statement that the land was not in any manner occupied adversely to the selector. The patent was issued to Moses June 6, 1910, and on April 22, 1913, Mrs. McIntyre conveyed her one-half interest in the premises to Mrs. Krueger. Mrs. Krueger testified that she paid her husband $400.00 in cash for the undivided one-half interest, and that she paid Mrs. McIntyre $1,500.00 by check for her one-half interest. She testifies that when she bought from her husband after final receipt, and before the patent issued, she had not seen the land and knew nothing about it, and did not in fact see it until March 27, 1913; that she knew nothing about the statements made in the affidavit signed by Moses or the affidavit of McIntyre; that before she purchased the interest of Mrs. McIntyre she had been upon the land and found there a Mrs. Benson, who said that her father-in-law was P. C. Benson, and that she and her husband were farming the land.

But we need not dwell upon any inferences which may arise from the relationship between Mrs. Krueger and her husband and her actual knowledge of Benson's possession, for we think the Circuit Court of Appeals was right in reaching the conclusion that Mrs. Krueger had at least constructive notice of the manner in which the land had been obtained from the Government. If the affidavit of Moses had truthfully stated the possession of Benson, Benson would have had an opportunity to claim his rights under the Act of March 3, 1887, and the regulations of the Land Department. From the receiver's receipt, which was the evidence of title of record when

Mrs. Krueger obtained the deed from her husband, she was bound to know that the land had been obtained upon an affidavit of Moses asserting that the land was not occupied adversely. Under the decisions of this court she was chargeable with notice from Benson's possession, and his record title from the railroad company, that he had a preferential right of purchase under the Act of March 3, 1887. *Gertgens v. O'Connor,* 191 U. S. 237, 246; *Ramsey v. Tacoma Land Co.,* 196 U. S. 360, 364. Having such notice of the origin of the title under which she had purchased, she was chargeable with notice of the facts shown by the records, and could not shut her eyes to these sources of information and still be an innocent purchaser without notice. This doctrine, often asserted in this court, was summarized in *Ochoa v. Hernandez,* 230 U. S. 139, 164, in which it was said: "It is a familiar doctrine, universally recognized where laws are in force for the registry or recording of instruments of conveyance, that every purchaser takes his title subject to any defects and infirmities that may be ascertained by reference to his chain of title as spread forth upon the public records. *Brush v. Ware,* 15 Pet. 93, 111; *Simmons Creek Coal Co. v. Doran,* 142 U. S. 417, 437; *Northwestern Bank v. Freeman,* 171 U. S. 620, 629; *Mitchell v. D'Olier,* 68 N. J. Law (39 Vr.), 375, 384; 53 Atl. Rep. 467; 59 L. R. A. 949."

If Mrs. Krueger had used these sources of information she would have ascertained that the Moses affidavit wherein it was stated that the lands were not in any manner occupied adversely was untrue. Constructively she is held to have knowledge of these facts. *Washington Securities Co. v. United States,* 234 U. S. 76, 79. And see *Dallemand v. Mannon,* 4 Colo. App. 262, 264. The defense of *bona fide* purchaser is an affirmative one, and the burden was upon Mrs. Krueger to establish it in order to defeat the right of the Government to have a cancellation of the patent, fraudulently obtained. *Wright-Blodgett*

*Co.* v. *United States*, 236 U. S. 397, 403, 404; *Great Northern Ry. Co.* v. *Hower*, 236 U. S. 702.

We agree with the Circuit Court of Appeals that Mrs. Krueger did not sustain the burden of showing that she was a *bona fide* purchaser for value, and under the circumstances shown she had constructive notice of the manner in which the land had been procured from the United States. The Circuit Court of Appeals did not err in holding that the Government was entitled to a cancellation of the patent.

*Decree affirmed.*

MR. JUSTICE MCREYNOLDS took no part in the consideration or decision of this case.