**SOUTHWESTERN PETROLEUM CORPORATION, a New Mexico corporation, Appellant,**

v.

**Stewart L. UDALL, Secretary of the Interior, W. J. Anderson, Acting State Director, State of New Mexico, Bureau of Land Management, Santa Fe, New Mexico, Michael T. Solan, Manager, United States Land Office, Bureau of Land Management, Santa Fe, New Mexico, Appellees.**

No. 8250.

United States Court of Appeals
Tenth Circuit.

June 6, 1966.

Thomas F. McKenna, Santa Fe, N. M. (McKenna & Sommer, Santa Fe, N. M., with him on the brief), for appellant.

S. Billingsley Hill, Atty., Dept. of Justice, Washington, D. C. (Edwin L. Weisl, Jr., Asst. Atty. Gen., John Quinn, U. S. Atty., John A. Babington, Asst. U. S. Atty., and Roger P. Marquis, Atty., Dept. of Justice, with him on the brief), for appellees.

Before PICKETT, HILL and SETH, Circuit Judges.

SETH, Circuit Judge.

Having exhausted its administrative remedies in its effort to have a federal oil and gas lease issued to it, Southwestern Petroleum Corporation sought relief in the federal court by filing this action against the federal officials concerned. Upon motion by both parties for summary judgment, the District Court for the District of New Mexico granted appellee Udall's motion, finding that Southwestern's right of statutory preference was cut off by the superior right of Ralph Lowe as a bona fide purchaser. The District Court held that Southwestern's right was merely a statutory right of preference, not a vested right against the United States which would be entitled to constitutional protection under the Fifth Amendment. Southwestern then took this appeal.

This case presents a conflict of rights arising under the Mineral Leasing Act of 1920, 30 U.S.C. §§ 181–263. Specifically, the question here is whether an applicant for a federal noncompetitive oil and gas lease who actually was the first qualified applicant under the terms of Section 17 of the Mineral Leasing Act (30 U.S.C. § 226(c)) has a right to a lease superior to that of an assignee of the person to whom a lease was issued contrary to department regulation, where such assignee claims the bona fide purchaser protection added to Section 27 of the Mineral Leasing Act by the Act of September 21, 1959, 30 U.S.C. § 184(h) (2), (i),[1] and the regulations promulgated pursuant to these amendatory acts. 43 C.F.R. § 191.15, now codified as 43 C.F.R. § 3104.2 (1965).

The facts essential to this case are here set out in chronological order:

July 7, 1958, 10:00 a. m., lease offer NM 048273 filed by J. Penrod Toles.
July 7, 1958, 10:16 a. m., lease offer NM 048299 filed by Southwestern Petroleum Corporation.

1. The September 21, 1959, Act provided in pertinent part as follows: "The right of cancellation or forfeiture for violation of the provisions of this Act shall not apply so as to affect adversely the title or interest of a bona fide purchaser in any lease, option for a lease, or interest in a lease acquired in conformity with the acreage limitations of this Act from any other person, association or corporation whose holdings, or the holdings of a predecessor in title, including the original lessee of the United States, may have been canceled or forfeited, or may be subject to cancellation or forfeiture for any such violation. Any person, association or corporation who is a party to any proceedings with respect to a violation of any provision of this Act shall have the right to be dismissed as such a party upon showing that the person, association or corporation acquired the interest involving him as such a bona fide purchaser without violating any provisions of this Act. * * *"

The September 2, 1960, Act provided in pertinent parts as follows: "The right to cancel or forfeit for violation of any of the provisions of this Act shall not apply so as to affect adversely the title or interest of a bona fide purchaser of any lease, interest in a lease, option to acquire a lease or an interest therein, or permit which lease, interest, option, or permit was acquired and is held by a qualified person, association, or corporation in conformity with those provisions, even though the holdings of the person, association, or corporation from which the lease, interest, option or permit was acquired, or of his predecessor in title (including the original lessee of the United States) may have been canceled or forfeited or may be or may have been subject to cancellation or forfeiture for any such violation. * * *

* * * * *

"Effective September 21, 1959, any person, association, or corporation who is a party to any proceeding with respect to a violation of any provision of this Act, whether initiated prior to said date or thereafter, shall have the right to be dismissed promptly as such a party upon showing that he holds and acquired as a bona fide purchaser the interest involving him as such a party without violating any provisions of this Act. No hearing upon any such showing shall be required unless the Secretary presents prima facie evidence indicating a possible violation of the Mineral Leasing Act on the part of the alleged bona fide purchaser."

Both offers included among other acreage applied for the SE¼, Section 17, Township 16 South, Range 27 East, N.M.P.M., which is the tract here in dispute.

January 27, 1959, Bureau of Land Management lease NM 048273 issued to J. Penrod Toles. The lease included the tract in dispute and was issued with the effective date of February 1, 1959.

February 10, 1959, lease NM 048273 assigned from J. Penrod Toles to Ralph Lowe.

March 5, 1959, Toles-Lowe assignment filed with the Bureau of Land Management at Santa Fe with the request that it be approved.

September 2, 1959, Bureau of Land Management lease NM 048299 issued to Southwestern Petroleum Corporation, including the tract in dispute. This lease was issued with the effective date of October 1, 1959.

September 21, 1959, Congress passed the bona fide purchaser amendments to the Mineral Leasing Act of 1920.

October 19, 1959, upon becoming aware that it had issued two leases covering the SE¼, Section 17, Township 16 South, Range 27 East, N.M.P.M., the Land Office at Santa Fe cancelled Southwestern's lease NM 048299 in its entirety. Southwestern did not appeal this cancellation through the administrative channels.

October 30, 1959, decision rendered by Land Office at Santa Fe and amended December 7, 1959, cancelling Toles' lease NM 048273 as to the tract in dispute on the ground that Toles' offer NM 048273 failed to include adjoining lands that were available for leasing up to the minimum of 640 acres as required by regulation. 43 C.F.R. § 3123.1(d).

November 2, 1959, the decision of the Land Office at Santa Fe of October 19, 1959, cancelling Southwestern's lease NM 048299 in its entirety was modified to leave the lease offer in effect.

September 2, 1960, further amendments to the bona fide purchaser protection act were enacted by Congress in the 1960 amendments to the Mineral Leasing Act.

April 18, 1962, the manager of the Land Office at Santa Fe entered his decision, approving the Toles-Lowe assignment of lease NM 048273, effective April 1, 1959, and rejecting Southwestern's lease offer NM 048299.

Toles appealed the cancellation of his lease, and the Director of the Bureau of Land Management affirmed the cancellation on May 26, 1960. On appeal to the Secretary of the Interior, it was held that the action was correct, but that cancellation was premature by reason of the assignment to Ralph Lowe. The decision held that if the assignment was proper in all respects, and the assignee Lowe was a bona fide purchaser, he must be allowed to take advantage of the statute and regulation protecting bona fide purchasers. J. Penrod Toles, 68 I.D. 285 (1961).

Upon remand to the Land Office, the Manager, in a decision dated April 18, 1962, held that the Toles-Lowe assignment was valid, that Lowe was a bona fide purchaser, and Southwestern's offer to lease was rejected.

Southwestern then pursued its administrative appeal, but the Secretary affirmed the Bureau's findings that Lowe was a bona fide purchaser and held that the right of an assignee who is a bona fide purchaser is superior to that of one who holds the right as the first qualified applicant. Southwestern Petroleum Corporation, 71 I.D. 206 (1964).

On this appeal Southwestern first contends that its statutory preference right was a vested right in existence on September 21, 1959, when the bona fide purchaser protection was added to the Mineral Leasing Act. Southwestern argues that to retroactively cut off such a right would be a denial of rights protected by the Fifth Amendment to the Constitution of the United States. Secondly, Southwestern contends that Lowe does not qualify for the protection of-

fered under the bona fide purchaser amendment to the Mineral Leasing Act. Third, Southwestern contends that it should have had the opportunity to be present and to present evidence when the bona fides of Lowe were considered by the Manager of the Land Office at Santa Fe.

■ The first point to be considered is whether the bona fide purchaser amendment was intended to be retroactively applied. The first bona fide purchaser amendment to the Act was effective on September 21, 1959, which was after the date of the lease assignment from Toles to Lowe, and before its approval by the Land Office. As to Southwestern the change in the Act came during the period a lease had also been issued to it for the same tract, but which was later cancelled (October 19, 1959) because the Toles lease was outstanding. Southwestern made no objection to the cancellation, and its offer to lease was later reinstated (November 2, 1959). The amendment was intended by Congress to have retroactive application to the extent that it was possible. This was the only way it could be effective to meet the conditions it was intended to correct. It was imposed upon the great mass of diverse transactions with an infinite variation of facts which had taken place in the issuance and assignment of federal oil and gas leases. The wording demonstrates this retroactive application both as to Southwestern and to protect Lowe to the extent he may be within the terms of the amendment.

Although a retroactive application was intended, was it effective as to the rights Southwestern had acquired? Southwestern says it was not because it held a vested interest protected by the Fifth Amendment. We cannot agree.

The Toles lease had been issued at least contrary to departmental regulations (43 C.F.R. § 3123.1(d)) requiring that certain available adjoining lands be included in such an offer to lease. The administrative vine was climbed by Toles on this point, and ultimately it was decided that his lease should be cancelled except as the interest of an assignee might be protected under the bona fide purchaser amendment. Thus the lease of Toles was subject to cancellation and Southwestern ultimately became the first qualified applicant and entitled to a lease.

■ The Secretary of the Interior and the courts have interpreted the Mineral Leasing Act as giving the Secretary the discretion to offer lands for lease, but once he has decided to lease it is mandatory that he issue a lease to the first qualified applicant, if he is going to lease at all. Foster v. Udall, 335 F.2d 828 (10th Cir.); Duesing v. Udall, 350 F.2d 748 (D.C.Cir.); McKay v. Wahlenmaier, 96 U.S.App.D.C. 313, 226 F.2d 35 (D.C.Cir. 1955); R. S. Prows, 66 I.D. 19 (1959). Thus Southwestern became entitled by the proceedings to seek administrative cancellation of the lease to Toles and an issuance of a lease to it. Boesche v. Udall, 373 U.S. 472, 83 S.Ct. 1373, 10 L.Ed.2d 491 (1963). Southwestern did not seek this administrative remedy until after the assignment of the Toles lease to Lowe and after April 18, 1962, when the Manager of the Santa Fe Land Office rejected Southwestern's lease offer.

■ The comprehensive authority of Congress over public lands includes the power to prescribe the times, conditions and mode of transfer thereof, and to designate the persons to whom the transfer shall be made. Gibson v. Chouteau, 80 U.S. (13 Wall.) 92, 20 L.Ed. 534. Except as rights are vested, the benefits of existing legislation may be superseded or be modified by later legislation. For example, oil and gas lease offers which were filed before the 1960 amendments to the Mineral Leasing Act, 74 Stat. 781, and which were still pending on September 2, 1960, have been held to be subject to the revised lease terms and increased rental rates contained in the 1960 Mineral Leasing Act amendments. Offerors were properly required to consent to leases subject to the terms of the 1960 Mineral Leasing Act amendment, or have their offers rejected. Miller v. Udall, 115 U.S.App.D.C. 162, 317 F.2d

573 (D.C.Cir.); Harold Ladd Pierce, 69 I.D. 14 (1962). Also where a contest over a preemption entry was pending which involved one private party whose prior entry was alleged defective and a second private party who held a statutory but unperfected right of preference, and Congress in the meanwhile directed a patent to issue to the party who had made the prior entry, the United States Supreme Court held that the second party's preference right was not a vested interest, and was cut off by the Congressional action. Emblen v. Lincoln Land Co., 184 U.S. 660, 22 S.Ct. 523, 46 L.Ed. 736 (1902). It should be noted that in Emblen, third parties, who were dependent upon the title of the prior entryman, had intervened in the administrative proceedings to protect their interests.

The right of Southwestern as against the Secretary to require the issuance of a lease to it came into being after the critical time. It was not then a "vested right," not a present legal or equitable "title," "interest" or "ownership" or "perfected right" at such time to come within the protection of the Fifth Amendment. It was a right to a right originating in the Mineral Leasing Act, later to become enforceable against the Secretary by reason of the Act and the decisions above referred to. It had not matured at the time Lowe's rights attached to such a point that it was vested as to be protected by the Fifth Amendment.

The status of the land and lease at any given time must be as determined by the last official act as this is effective until changed. This was demonstrated, and recognized by Southwestern, in the issuance of the lease to it when the Toles lease was outstanding although under attack. Under the typical definitions of a vested right, Southwestern had no present right, as contemplated by the Fifth Amendment, vested in it prior to a final disposition of the Toles lease by the appropriate authority. Before the bona fide purchaser amendments the timing made no great difference, but with the insertion of third party rights into the proceedings as of a certain time, the progress in perfecting claims becomes important. Southwestern, by administrative decision, became the "first qualified applicant," but until this was actually done there existed no more than a possibility. As described above, this eventuality did come about and Southwestern's rights then accruing are described, but this occurred long after the assignment to Lowe by Toles. At the time Lowe's rights arose under the bona fide purchaser amendment the position of Southwestern was still uncertain and subject to the administrative proceedings which ensued. The right of Southwestern at the critical time was inchoate under Fifth Amendment standards.

█ It must be concluded that the bona fide purchaser protection afforded Lowe, if he qualifies, is superior to the rights of Southwestern when these two rights come into conflict since Congress so intended and there was no interest in Southwestern protected by the Fifth Amendment.

Turning from the constitutional issue raised by appellant to the requirements of the Act, Southwestern argues that Lowe was not entitled to bona fide purchaser protection because: (1) He had notice of the defect in Toles' lease before his assignment was approved, and he could not claim bona fide purchaser protection for a pending but not approved assignment; and (2) Lowe and his attorneys had actual or constructive notice of the defect in Toles' title from the public records at the Land Office in Santa Fe before Lowe took the assignment from Toles.

█ Lowe's pending assignment created an interest which is entitled to bona fide purchaser protection. The statute provides protection to the bona fide purchaser where the interest of the person from whom the lease was acquired "may have been canceled or forfeited or may be or may have been subject to cancellation or forfeiture." 30 U.S.C. § 184(h) (2). The inclusion of the "or may be"

phrase contemplates that an interest still may be held by the lessee, and this was the fact in the case at bar. Assignment of the Toles lease had been made by him and filed by Lowe but approval was still pending. The Department recognized Toles as the lessee until approval of the assignment was given. See Departmental Regulation, 43 C.F.R. § 3128.2(c) (1965). It has also been held, in the case of patents under timber entries that a bona fide purchaser would be protected even where his interests were acquired before the patent issued for the entry. United States v. Detroit Timber & Lumber Co., 200 U.S. 321, 26 S.Ct. 282, 50 L.Ed. 499 (1906); United States v. Clark, 200 U.S. 601, 26 S.Ct. 340, 50 L.Ed. 613 (1906). Thus the assignment need not have been approved to entitle Lowe to the protection of the amendment. The date of the assignment is the significant date on the notice issue as there we have the entry of a third party into the act.

The second part of Southwestern's attack on the bona fides of Lowe, regarding the degree of notice to which the bona fide purchaser should be held, calls for an inquiry into the definition of the phrase, "bona fide purchaser," as used in the 1959 and 1960 amendments to the Mineral Leasing Act.

■ Congress did not express in the statute who it considered to be a bona fide purchaser. The Senate and House hearings on the amendments reveal an intent to apply the general common law definition of bona fide purchaser. The legislators and witnesses particularly emphasized that one claiming to be a bona fide purchaser must not have been involved in or have knowledge of any fraud or violation of any of the provisions or regulations of the Mineral Leasing Act by his predecessor in title. Hearings Before Senate Subcommittee on Public Lands, 86th Cong., 1st Sess., pt. 2, S.2181 et al. at 110, 122–123 (1959), U.S. Code Congressional and Administrative News 1959, p. 3620, and 86th Cong., 2d Sess., pt. 3, S.2983, at 301, 329 (1960). The basic criterion

expressed was whether the person asserting he is a bona fide purchaser, and who has shown that value has been paid for his interest, has acted in good faith. For Lowe to qualify as a bona fide purchaser under the common law standards which we hold to be generally applicable, he must have acquired his interest in good faith, for valuable consideration, and without notice of the violation of the departmental regulations.

In using the common definition of "bona fide purchaser," the application of the "without notice" requirement is difficult. Southwestern points out that Lowe had actual notice of Southwestern's pending lease offer before he made his agreement with Toles and filed his assignment. Lowe and his attorneys had seen Southwestern's offer in the records. Lowe had his attorneys check the records and they gave him a title opinion. They advised him that Southwestern's offer was probably filed subsequent to Toles' offer, and Lowe checked the records at the Land Office and satisfied himself that Southwestern's offer was junior in time.

■ Southwestern contends that Lowe's actual knowledge of its pending lease offer should be sufficient to impute knowledge that Southwestern's right to a lease was superior to Toles' right, either because of imputed notice, or constructive notice. We do not agree. Southwestern would by this argument have a party contemplating the purchase of a lease examine Land Office records which show the status of an offer or lease, such as the serial register book, the master plats, and other records which show the particular chain of title through which the party makes his claim, but it would in addition require the party to examine other records and files to ascertain the validity of the offer of his assignor, even though the assignor's offer and resultant lease show no defect on their face. Here this would have required Lowe to go outside the records pertaining to the land to be assigned and to check the status of the lands adjoining the offer, so that if some of

the lands included in the offer were available for leasing, Lowe would know whether Toles should have included more adjoining available lands to comply with the 640 acre rule.

Southwestern's search requirements would place too great a burden on the prospective purchasers of federal oil and gas leases. The imposition of such strict notice requirements would completely defeat the overall purpose of the bona fide purchaser amendment.

██ It is difficult to apply the amendment in the absence of a definition of "notice" and without any statutory provision for constructive notice. We agree that the test for imputing notice of a superior right is generally whether facts are sufficient to put an ordinarily prudent man on inquiry, an inquiry which, if followed with reasonable diligence, would lead to the discovery of defects in the title or of equitable rights of others affecting the property. The test is not what an extremely cautious person might do, but what a prudent one should do. Charles v. Roxana Petroleum Corp., 282 F. 983 (8th Cir.), cert. den. 261 U.S. 614, 43 S.Ct. 361, 67 L.Ed. 827.

The existence of other later offers is not such a fact as to put Lowe on notice that a conflicting claim exists. This is a common situation which in itself should cause no suspicion. The lease could have been cancelled for the violation of the regulation whether or not another offer existed. The offer of Southwestern was not a conflicting claim according to the records pertaining to the tract in issue, but instead these records showed it was junior. Southwestern had taken no steps to initiate administrative action, or to otherwise put Lowe on notice, until long after the assignment to Lowe.

██ There is no specific statute providing for constructive notice of Land Office records, which are maintained primarily for departmental use. The bona fide purchaser amendment however necessarily contemplates some inquiry

be made into the records pertaining to title. Otherwise a premium would be on negligence and studied ignorance. Gabbs Exploration Co. v. Udall, 114 U.S.App. D.C. 291, 315 F.2d 37; Krueger v. United States, 246 U.S. 69, 38 S.Ct. 262, 62 L.Ed. 582; 30 U.S.C. § 184(h) (3). The use of the Land Office records for title search must be recognized. We hold that Lowe in taking an assignment of a federal oil and gas lease could presume regularity in the issuance of the lease where the Land Office serial register pages, tract book, and plat (not master plats) show the particular lands to be available for leasing and the particular lease to be in good standing. He was not bound to make a searching examination of Land Office records pertaining to other lands in order to ascertain whether a defect in a lease application may have existed. To make such a requirement would nullify the bona fide purchaser amendment. United States v. Detroit Timber & Lumber Co., 200 U.S. 321, 26 S.Ct. 282, 50 L.Ed. 499 (1906).

██ Finally, Southwestern asserts that it was denied the opportunity to be present and to present evidence when Lowe's bona fides were examined by the Land Office Manager. The record shows that Southwestern participated in the appeals to the Director and the Secretary from the Manager's decision that Lowe was a bona fide purchaser, that the assignment to Lowe be approved, and that Southwestern's offer be rejected. In the appeal to the Director Southwestern made no request for a remand for a hearing on the bona fide facts, but expressly elected otherwise and expressed a wish to proceed with "its case" before the Director. At these hearings on appeal Southwestern was free to present whatever material it wished on this point, but it chose not to. By so doing Southwestern effectively waived whatever rights it may have had, if any, to an adversary hearing before the Manager, and may not now raise the issue.

Affirmed.