721 F.2d 694
 GEOSEARCH, INC. and M.T. McGregor, et al., Plaintiffs-Appellants,
v.
James G. WATT, Secretary of the United States Department of
the Interior; Maxwell T. Lieurance, State Director, Wyoming
State Office, Bureau of Land Management, Department of the
Interior; Glenna M. Lane, Chief, Oil and Gas Section,
Wyoming State Office, Bureau of Land Management, Department
of the Interior, et al., Defendants-Appellees.
Geosearch, Inc., et al., Plaintiffs-Appellants,
James G. Watt, Secretary of the United States Department of
the Interior, et al., Defendants-Appellees.
 Nos. 82-1335, 82-1385, 82-1428 to 82-1431, 82-1438 to
82-1446, 82-2049, 82-2050, 82-2086, 82-2087,
83-1407 and 83-1408.
 United States Court of Appeals,
Tenth Circuit.
 Nov. 7, 1983.
 
 Melvin E. Leslie, Salt Lake City, Utah, for plaintiffs-appellants Geosearch, Inc., M.T. McGregor, Larry R. Glassnap, Herbert Maslan, Edward F. Kaliciak and Elizabeth H. Carter.
 Janet Steckel, Dept. of Justice, Washington, D.C. (Richard Allen Stacy, U.S. Atty., Cheyenne, Wyo., Carol E. Dinkins, Asst. Atty. Gen., Jacques B. Gelin, Dept. of Justice, Washington, D.C., with her on brief), for defendants-appellees James G. Watt, et al.
 Wayne E. Babler, Jr., Quarles & Brady, Milwaukee, Wis. (Thomas W. Ehrmann and Charles A. Grube, Quarles & Brady, Milwaukee, Wis., with him on briefs), for plaintiffs-appellants Pagedas et al., Belknap, Morgan, McDonald, Sacher, Stewart, Zuckerman, Burr, Lochner MacCracken, Desens and Resource Service Company, and defendants-appellees Pagedas et al., Belknap, Morgan, Zuckerman, Burr, MacCracken, Desens and Resource Service Co.
 Morris R. Massey, Brown, Drew, Apostolos, Massey & Sullivan, Casper, Wyo., for defendant-appellee Inexco Oil Co.
 Richard L. Williams, Williams, Porter, Day & Neville, P.C., Casper, Wyo., on brief for defendant-appellee Gulf Oil Corp.
 John F. Shepherd, Holland & Hart, Denver, Colo. (William E. Murane and Frank H. Morison, Holland & Hart, Denver, Colo., with him on brief), for defendant-appellee Marvin Davis.
 Laura L. Payne, Poulson, Odell & Peterson, Denver, Colo., for defendants-appellees Ensearch Exploration, Inc. and Home Petroleum Corp.
 Gaynell C. Methvin, Dallas, Tex., on brief, for defendants-appellees May Petroleum, Inc. and Premco Western, Inc.
 Stephen F. Noser, Michigan Wisconsin Pipe Line Co., John B. Holstead and B. Lee Ware, Vinson & Elkins, Houston, Tex., and Houston G. Williams, Williams, Porter, Day & Neville, Casper, Wyo., on brief, for defendant-appellee Michigan Wisconsin Pipe Line Co.
 Leslie Abrams Pizzi, Clanahan, Tanner, Downing & Knowlton, Denver, Colo., on brief, for defendant-appellee Monsanto Co.
 Before DOYLE, McKAY and SEYMOUR, Circuit Judges.
 WILLIAM E. DOYLE, Circuit Judge.
 
 
 1
 We here deal with two groups of consolidated cases. One group consists of nineteen consolidated cases. The other group is composed of two cases. Both groups involve essentially the same facts and present pretty much the same issues.
 
 
 2
 All of these cases seek review of numerous decisions of the Interior Board of Land Appeals (IBLA), which were reviewed and affirmed by the district court in several decisions. The cases involve the status of non-competitive oil and gas leases on public lands issued after simultaneous drawings held pursuant to the Mineral Lands Leasing Act, 30 U.S.C. Sec. 181, et seq.
 
 
 3
 There are two main groups of appellants. One is Fred L. Engle, d/b/a Resource Service Company (RSC), and its clients who were first drawees in these drawings--Pagedas, Belknap, Morgan, McDonald, Sacher, Stewart, Zuckerman, Burr, Lochner, MacCracken and Desens.[1]
 
 
 4
 The second group of appellants consists of Geosearch, Inc. and the second drawees on certain of the leases to which RSC's clients were first drawees--McGregor, Glassnap, Maslan, Kaliciak, Carter,[2] Scholl, Doerr and Gittler.[3] Geosearch had purchased the lease interests of these second drawees. The Geosearch appellants appeal from decisions of the IBLA and district court that, in those cases where leases had been issued to RSC's clients and those leases had been conveyed to third parties, those third parties were bona fide purchasers within the meaning of 30 U.S.C. Sec. 184(h)(2) (1976) and 43 C.F.R. Sec. 3108.3(c). Geosearch also challenges the finding that it had no enforceable interest in those leases, and hence, no standing to contest the matter.
 
 
 5
 There are four groups of appellees involved in these cases--the federal government (representing IBLA); RSC (seeking affirmance of that portion of the decisions holding that the third party purchasers from RSC's clients were bona fide purchasers); the bona fide purchasers (seeking affirmance of the same portion of the decisions);[4] and Geosearch (seeking affirmance of that portion of the decisions holding that the lease offers of RSC's clients were defective).
 
 BACKGROUND
 1. Pertinent Statutes and Regulations
 
 6
 Section 17(c) of the Mineral Lands Leasing Act of 1920, 41 Stat. 443, 30 U.S.C. Sec. 226(c), provides that if the Secretary of the Interior decides to lease a parcel of public land which is "not within any known geological structure of a producing oil or gas field, the person first making application for the lease who is qualified to hold a lease under this chapter shall be entitled to a lease of such lands without competitive bidding." Originally, the government followed the literal words of the statute. However, as oil and gas became more valuable, the number of applications for non-competitive oil and gas leases increased, and it became impractical for BLM to attempt to administer a race-to-the-land office system. Thor-Westcliffe Develop., Inc. v. Udall, 314 F.2d 257 (D.C.Cir.), cert. denied, 373 U.S. 951, 83 S.Ct. 1681, 10 L.Ed.2d 706 (1963). Therefore, the Secretary, under the authority contained in 30 U.S.C. Sec. 189, issued regulations which provided that all non-competitive oil and gas leases applicable for a given parcel in response to a Bureau of Land Management (BLM) announcement, filed within the time prescribed in the notice, shall be deemed to have been filed simultaneously. 43 C.F.R. Sec. 3112.1-2, Sec. 3112.2-1 (1977).
 
 
 7
 Under these regulations, offerors are required to file their applications on a Drawing Entry Card (DEC). Three DECs are drawn at random from the cards, and the lease is issued to the first-drawn applicant, 43 C.F.R. Sec. 3112.2-1(a)(3) (1977), provided that the successful applicant is qualified under BLM regulations. If the applicant whose card is drawn first is not qualified, or if the applicant's DEC is not completed in the manner specified in the regulations, the applicant whose card was drawn second is selected, provided he or she is qualified and pays the first year's rental within the prescribed time. If none of the three first drawn applicants is qualified, and if the Secretary decides to reoffer the tracts for lease (which he is not required to do), a new notice is published and a new drawing is held. 43 C.F.R. Sec. 3112.5-1 (1977).
 
 
 8
 If, after the issuance of a lease to one of the drawees the Secretary determines that the lease was improperly issued because of defects in the offer of the drawee chosen, the lease must be cancelled. 30 U.S.C. Sec. 184(h)(1) (1976); 43 C.F.R. Sec. 3108.3(a) (1977). If, however, that lease was subsequently conveyed to a bona fide purchaser, the Secretary is prevented from cancelling such lease or lease interest held by that purchaser, regardless of any defect in the underlying lease offer. Any interest in the lease retained by the offending original drawee, however, must be cancelled and may then be resold in a competitive sale. 30 U.S.C. Sec. 184(h)(2) (1976); 43 C.F.R. Sec. 3108.3(c) (1977).
 
 
 9
 Two essential features of the non-competitive oil and gas simultaneous filing system are the sole party-in-interest and multiple filing regulations. The sole party-in-interest regulation, 43 C.F.R. Sec. 3102.7 (1977) requires the applicant to disclose in a signed writing the identity of all other persons and entities having an interest in the lease being drawn, and the exact nature of the interest held or assigned. If the interest is embodied in a writing, the applicant must furnish BLM with a copy of the written agreement.
 
 
 10
 The multiple filing regulation, 43 C.F.R. Sec. 3112.5-2 (1977), provides that when two persons or entities have "any agreement, scheme, or plan which would give either, or both, a greater probability of successfully obtaining a lease or interest therein," all DECs filed for that drawing by either of them shall be rejected. Specifically covered is the situation "where an agent or broker files an offer to lease for the same lands in behalf of more than one offeror under an agreement that, if a lease issues to any of such offerors, the agent or broker will participate in any proceeds derived from such lease, the agent or broker obtains thereby a greater probability of success in obtaining a share in the proceeds of the lease." Id. If the regulation is violated, all such offers filed by such agent or broker will be rejected. Id.
 
 2. The RSC Service Agreement and Disclaimer
 
 11
 It is noted there is an RSC service agreement and, like the Coyer case, there was a disclaimer by Fred L. Engle, who is head of the service company. It submits non-competitive oil and gas lease offers on behalf of its clients pursuant to a standard service agreement, which provides, in pertinent part:
 
 
 12
 If I am successful in a drawing, I hereby authorize you to act as my sole and exclusive agent to negotiate for me and on my behalf * * * any right I obtain by reason of being successful in a drawing for the best price obtainable by you. Any final negotiated price is subject to my approval. If you have successfully negotiated a sale * * *, I hereby agree to pay you for your services in accordance with the schedule detailed below. [The scheduled fees ranged from twelve to sixteen percent depending upon the amount of the sale price. A similar schedule existed for overriding royalty payments, if any, negotiated for the client.] This agency to negotiate shall be valid for a period of five (5) years. (Emphasis in original.)
 
 
 13
 In December of 1976, the Wyoming office of the BLM had received a protest concerning the qualifications of several of RSC's clients who had been awarded priorities in lease drawings. The protestor contended that the exclusive brokerage provision in RSC's service agreement created an "interest" in RSC which was not disclosed as required by 43 C.F.R. Sec. 3102.7 (1977).
 
 
 14
 Upon learning of the protest (and of the BLM opinion ruling that the brokerage agreement created an interest in RSC which had to be disclosed at the time of filing a DEC), Engle (RSC's founder) approached the BLM to attempt to arrange an agreement to preserve the DECs of RSC's remaining clients. Engle proposed that RSC notify each of its winning clients that it disclaimed the brokerage right granted by the service agreement, thereby eliminating the contested provision and avoiding having to renegotiate the several thousand agreements already in existence. The BLM agreed to accept the disclaimer but warned RSC that the validity of the document was subject to review by the IBLA.
 
 
 15
 On January 13, 1977, RSC filed its disclaimer with the BLM which stated in pertinent part: "I, Fred Engle, d/b/a Resource Service Company, do hereby state and aver that I do hereby waive and renounce my exclusive agency which I may have by reason of said service agreements with said offerors from and after this date." The disclaimer also provided that in the event the brokerage provision in the service agreement was deemed not to create an interest in RSC, the disclaimer was null and void.
 
 3. The Proceedings in the Trial Court
 
 16
 The cases at bar involve numerous leases in which RSC clients were first drawees. Each client had signed the same service agreement with RSC as described above. In addition, RSC attempted to remove its interest in those lease offers with the same amendment and disclaimer just described.
 
 
 17
 Most of the first drawees were issued leases, which they conveyed to third party purchasers, retaining overriding royalty interests for themselves and RSC. The Interior Department rejected the lease offers of the remaining first drawees. With regard to the issued leases, Geosearch, the apparent assignee of the second drawees, protested the issuance, claiming the first drawees' offers were defective because of the RSC service agreement.
 
 
 18
 In each of the IBLA decisions below, the IBLA held that the RSC service agreement gave RSC an improper undisclosed interest in its clients' lease offers, and that the amendment and disclaimer filed with the BLM by RSC was not effective to remove that interest. Furthermore, the IBLA held that Interior was not estopped from finding the RSC service agreement improper and was not prevented from applying this ruling retroactively.
 
 
 19
 However, the IBLA reversed the administrative findings of the BLM that, for those cases in which leases were issued to RSC's clients and those leases were conveyed to third parties, the third party purchasers were not bona fide purchasers. Instead, it held that those purchasers were bona fide purchasers because they had no actual or constructive knowledge of any defect in the leases which they were purchasing. This was because nothing in the BLM files for these leases indicated such defects; any question which the purchasers may have had regarding the efficacy of the leases was justifiably removed when BLM issued the leases to RSC's clients; and prior IBLA decisions did not give such notice of defects in the particular leases purchased. As a result, the IBLA held that the BLM had properly returned, or should forthwith return, the DECs of the second and third drawees. It ruled that this was necessary because, since the leases had been issued to superior drawees and conveyed the leases to bona fide purchasers, the second and third drawees no longer had an interest in the leases to which its DECs could apply.
 
 
 20
 Finally, the IBLA held that, for those leases issued and conveyed to bona fide purchasers, the overriding royalty interests of RSC and its clients were properly cancelled. In those cases in which no lease had been issued to RSCs clients, the IBLA held that their DEC's were properly rejected.
 
 
 21
 Several district court orders affirmed these decisions. See Geosearch, Inc. v. Watt, No. C81-208K (D.Wyo. Jan. 11, 1982); Geosearch, Inc. v. Watt, Nos. C82-240 and C82-379 (D.Wyo. Feb. 9, 1983); Geosearch, Inc. v. Watt, Nos. C81-0266, C81-0267, C81-0276, C81-0279, C81-0280, C81-0288, C81-0298, C81-0299, C81-0305, C81-0306, C81-0307, C81-0308 and C81-0321 (D.Wyo. Feb. 3, 1982). In C81-208K, which is representative of all of these cases, the district court held that its decision in Coyer v. Andrus, Nos. 78-0104, 80-0370 and 80-0372 (D.Wyo., March 5, 1981), which was that RSC had an improper undisclosed interest in its clients' lease offers that was uncured by its amendment and disclaimer, was correct. Therefore, it held that the cancellation of any interest held by RSC and its clients was proper. Furthermore, the court held that the IBLA's decisions regarding the bona fide purchasers was correct and, consequently, that Geosearch had no standing to contest the issuance of the leases because it had no enforceable interest in those leases. In sum, the district court upheld the several IBLA rulings upon finding that they were not arbitrary, capricious and abuse of discretion, or contrary of law. These appeals followed.
 
 
 22
 In Coyer v. Andrus, Case No. 81-1415, we adopted the rationales and conclusions of Lowey v. Watt, 684 F.2d 957 (D.C.Cir.1982). Lowey, which involved substantially the same facts as Coyer, held that RSC's "Amendment and Disclaimer" was effective and that, therefore, the first drawees were "qualified."
 
 
 23
 Second drawees or their assignees (here Geosearch) cannot successfully contest issuance of a lease to qualified first drawees (here, RSC's clients). On this basis alone, the Geosearch appeals must be dismissed.
 
 
 24
 Even if we had held in Coyer that RSC's disclaimer was not effective, Geosearch still could not contest an improperly issued lease if that lease had been assigned to a bona fide purchaser. 30 U.S.C. Sec. 184(h)(2) (1976). That is the case here. "[O]ne claiming to be a bona fide purchaser must not have been involved in or have knowledge of any fraud or violation of any of the provisions or regulations of the Mineral Leasing Act by his predecessor in title * * *. The basic criterion [is] whether the person asserting he is a bona fide purchaser * * * [has] acquired his interest in good faith, for valuable consideration, and without notice of the violation of the departmental regulations." Southwestern Petroleum Corp. v. Udall, 361 F.2d 650, 655-56 (10th Cir.1966).
 
 
 25
 In the administrative proceedings below, the IBLA found that the assignees of the first drawees were bona fide purchasers. Several reasons were cited by the IBLA. First, the first drawees' DECs were completely and accurately completed. Second, the assignees had no way of telling from the BLM's files that RSC had any interest in the first drawees' leases. Third, at the time the assignments of several of the leases were completed (by final payment), the BLM had, in fact, issued the leases. Fourth, the assignees had a right to presume that the BLM was aware of the IBLA decision proscribing RSC's brokerage agreement and that it was processing offers of RSC clients so as to ensure that no other such undisclosed interests were represented by such offers. In other words, the assignees were entitled to presume that the BLM had properly discharged its responsibilities in assessing the adequacy of the first drawees' lease offers. Taken together, these factors were held, by the IBLA, to be clear evidence to bona fide purchasers that the leases in question were not in any way defective. See Ervin Staack, 62 IBLA 278, 283-84 (March 16, 1982); David Burr, 56 IBLA 225, 229-30 (July 22, 1981); Jack Zuckerman, 56 IBLA 193, 201-04 (July 22, 1981); Woods Petroleum Corp., 55 IBLA 348, 356-57 (June 26, 1981); Robert E. Belknap, 55 IBLA 200, 206-08 (June 16, 1981); Wilbur G. Desens, 54 IBLA 271, 27779 (April 28, 1981); Inexco Oil Co., 54 IBLA 260, 266-69 (April 28, 1981).
 
 
 26
 In sum, and on the facts that were presented to it, the IBLA concluded that the BLM records did not furnish the assignees here with notice that RSC might have an impermissible interest in their leases. Inasmuch as this conclusion is supported by substantial evidence, it cannot be said that the district court erred in affirming the IBLA and in holding that Geosearch had no standing to bring this action.
 
 
 27
 Accordingly the causes herein should be reversed and remanded to the district court. The district court should reinstate the cancelled interests of the first drawees.[5] Other first drawee lease offers, which were rejected by the IBLA, must also be reconsidered in light of this opinion and Coyer.[6] The appeals of the second drawees and their assigns must be dismissed.
 
 
 
 [1]
 RSC and its clients, Pagedas, et al., are appellants in Cases Nos. 82-1385, 82-1438, 82-1439, 82-1440, 82-1441, 82-1442, 82-1443, 82-1444, 82-1445, 82-1446, 82-1449 and 82-1450. RSC and its clients are not appellants in two Geosearch cases, Nos. 83-1407 and 83-1408
 
 
 [2]
 McGregor, Glassnap, Maslan, Kaliciak and Carter are appellants in Cases Nos. 82-1335, 82-1428, 82-1429, 82-1430, 82-1431, 82-2086 and 82-2087
 
 
 [3]
 Gittler, Scholl and Doerr are appellants in Cases Nos. 83-1407 and 83-1408
 
 
 [4]
 Ensearch, Inexco, Gulf, Marvin Davis, Woods Petroleum, May Petroleum, and Home Petroleum are the bona fide purchasers (or their assignees) in Cases Nos. 82-1335, et al. Monsanto, Michigan Wisconsin Pipeline, Northern Natural Gas, Getty Oil, Elf Aquitaine and Diamond Shamrock are the bona fide purchasers (or their assignees) in Cases Nos. 83-1407 and 83-1408
 
 
 [5]
 We should note that, as to Case No. 83-1408, the government has already motioned that we remand to the district court for reinstatement of the overriding royalty interests cancelled by the IBLA
 
 
 [6]
 These leases are involved in Case Nos. 82-1335, et al