James V. O'KANE and F. Kenneth
Millhollen, Plaintiffs-Appellants,

v.

Brown WALKER and D. L. Hannifin,
Defendants-Appellees.

No. 76–2169.

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted July 21, 1977.

Decided Sept. 6, 1977.

Alan M. May, Los Angeles, Cal. (Charles A. Pharris, Albuquerque, N. M., on the brief), for plaintiffs-appellants.

Robert H. Strand, Roswell, N. M., for defendant-appellee (Hannifin).

Before McWILLIAMS, DOYLE and MARKEY.*

MARKEY, Chief Judge.

Appeal by plaintiffs James V. O'Kane and F. Kenneth Millhollen (collectively, O'Kane) from a judgment[1] declaring defendant D. L. Hannifin (Hannifin) the owner of record title interest in U.S. Department of Interior Oil and Gas Lease No. NM 3620, by virtue of an assignment to Hannifin from defendant Brown Walker (Walker) dated June 18, 1974. We affirm.

---

* Honorable Howard T. Markey, Chief Judge, United States Court of Customs and Patent Appeals, sitting by designation.

1. The district court's decision in this diversity action is unreported. The court held a one-day nonjury trial, rendered its decision from the bench, and subsequently entered the detailed written findings and conclusions of record here.

*The Facts*

The district court's findings of fact are not challenged. The following chart will aid in understanding the involved chain of title ("BLM" means "Bureau of Land Management," U.S. Department of Interior):

Conveyances of Record Title Interest For Oil and Gas Lease No. NM-3620

```
                    United States
                              Oil & Gas Lease
                         (1)  Issued - 11/1/67
                  Franklin Eisenzoph
                              Assignment:
                         (2)  Executed - 10/21/67
                              Approved Effective by BLM - 1/1/68
                    Ivan S. Osborn
                              Assignment:
                         (3)  Executed - 7/1/71
                              Approved Effective by BLM - 8/1/71
                    Doreen Smith
                              Assignment:
                         (4)  Executed - 11/17/70
                              Approved Effective by BLM - 8/1/71
    ------------------------ Brown Walker ---------------------
    |          Assignment:
    |          Executed - 12/13/71
    |     (5)  Filed with BLM - 7/16/74
    |          Approval by BLM denied - 7/31/74
  Doreen Smith
    |          Assignment:
    |          Executed - 12/4/71
    |     (6)  Filed with BLM - 12/10/71
    |          Approved Effective by BLM - 2/1/72
    |          Approval declared null and void
    |          by written decision of BLM - 2/15/74
  Plaintiffs-Appellants
  O'Kane and Millhollen
                              Assignment:
                         (7)  Executed - 6/18/74
                              Filed with BLM - 6/27/74
                                        Defendant-Appellee
                                          D. L. Hannifin
```

On October 20, 1967, BLM issued the involved lease to Franklin C. Eisenzoph, pursuant to the Mineral Lands Leasing Act, 30 U.S.C. § 181 *et seq.*, covering 519.91 acres in Eddy County, New Mexico at an annual rental of $260. The lease had an effective date of November 1, 1967, was for ten years, and bears serial number NM 3620.

Conveyance (2) took place on October 21, 1967, when Eisenzoph assigned his interest to Ivan S. Osborn. This assignment was approved by BLM, as required by 30 U.S.C. § 187, with an effective date of January 1, 1968.

Conveyance (3) occurred on July 1, 1971, when Osborn assigned to Doreen Smith. BLM approved this assignment, with an effective date of August 1, 1971.

Conveyance (4) effectively took place on July 1, 1971, when title passed, under the doctrine of after acquired title, from Doreen Smith to Walker, by virtue of an assignment executed on November 17, 1970, prior to the time Smith actually acquired

title. This assignment was approved by BLM with an effective date of August 1, 1971.

Conveyance (5) occurred on December 13, 1971, when Walker executed an assignment to Doreen Smith. This assignment was not filed with BLM until July 16, 1974. BLM denied approval of this assignment on July 31, 1974.

Purported conveyance (6) would have occurred on December 13, 1971, when title would have passed from Doreen Smith to O'Kane under the doctrine of after acquired title by virtue of an assignment executed on December 4, 1971. This assignment was filed at BLM on December 10, 1971 and initially approved by BLM with an effective date of February 1, 1972. On February 15, 1974, BLM filed its written decision declaring null and void its approval of this assignment. The BLM decision ordered refund of the rental fees paid by O'Kane for the years 1972 and 1973, and ordered Walker to remit them. O'Kane accepted the remitted fees from BLM. The decision recognized Walker as owner of record title interest in the lease, and allowed O'Kane thirty days within which to perfect an administrative appeal of the decision. O'Kane perfected no appeal and filed no notice with BLM of any claim to any interest in NM 3620 as of June 18, 1974, the date of purchase by Hannifin.

On June 18, 1974, Walker telephoned Hannifin and offered to sell the record title interest in lease NM 3620 for the sum of $7,800 ($15 per acre for the remaining three year term). Walker said he needed the money in a hurry and that the conveyance would be without warranty of title.

Hannifin said he would have to check the title first, but would contact Walker thereafter. Hannifin, an independent petroleum land man with twenty years in the oil and gas business, normally checked title to all assignments of federal oil and gas leases which he purchased. His procedure was to request an abstractor specializing in federal oil and gas records to examine the BLM records and to provide an oral summary thereof. The district court found that such a title examination procedure was commonly utilized to check title to federal oil and gas leases prior to purchase.

Hannnifin telephoned Joe B. Schutz, owner of Schutz Abstract Company, Santa Fe, New Mexico and an abstractor specializing in federal oil and gas records, and requested him to check the BLM records pertaining to NM 3620 and to report back by telephone.

On the same day (June 18, 1974), Schutz called Hannifin and relayed the following: (1) That BLM records indicated that record title interest was owned by Walker by virtue of conveyance (4) from Doreen Smith; (2) That conveyance (6) from Doreen Smith to O'Kane had been filed and approved by BLM with an effective date of February 1, 1972, but that there was nothing on file conveying title from Walker back to Doreen Smith; (3) That on February 15, 1974, BLM had revoked its approval of conveyance (6), declaring it null and void, declaring Walker owner of record title interest, allowing O'Kane the right of appeal warning O'Kane of the consequences of failure to comply with regulations relating to administrative appeals; (4) That O'Kane had failed to appeal, and had filed no other notice or instrument with BLM indicating any claim to NM 3620, subsequent to the BLM decision of February 15, 1974.

Reviewing maps and other data, Hannifin determined that $15 per acre was a good price. He hoped to resell the lease for $40 to $50 per acre. Expert testimony determined the fair market value of NM 3620, as of June 18, 1974, to be from $15 to $50 per acre.

Hannifin accepted Walker's offer and Walker effected conveyance (7) mailing an executed assignment to Hannifin. The assignment to Hannifin was on a standard BLM form commonly used for such assignments in New Mexico, and which does not contain an express warranty of title.[2] Expert testimony established that there is no custom or practice requiring that assignments of federal oil and gas leases be made with warranty of title.

2. All of the assignments here involved were made on standard BLM forms.

Upon receipt of the executed assignment on June 26, 1974, Hannifin mailed a cashier's check for $7,800 to Walker. Hannifin submitted the assignment to BLM for its approval on the next day.

On July 16, 1974, O'Kane filed conveyance (5), the assignment from Walker to Doreen Smith of December 13, 1971, with BLM for its approval, and simultaneously filed protest against approval of the assignment from Walker to Hannifin. By written decision on July 31, 1974, BLM denied O'Kane's request for approval of conveyance (5) and dismissed the protest.

O'Kane appealed the BLM decision of July 31, 1974, to the Board of Land Appeals in the Department of Interior. On March 18, 1975, the Board set aside the BLM decision of July 31, 1974,[3] directed the parties to institute litigation or otherwise resolve the dispute, and directed BLM to approve an assignment in accordance with rights so established. O'Kane then filed the instant declaratory judgment action.

*The District Court's Conclusions of Law*

Those material on this appeal are:

3. As of June 18, 1974, the defendant Brown Walker was the owner of record title interest in and to federal oil and gas lease NM 3620.

4. The purchase price of $7,800 or approximately $15 per acre paid by the defendant Hannifin to the defendant Brown Walker for assignment of NM 3620 was an adequate and reasonable consideration for purchase of said oil and gas lease, and therefore said purchase price was not so low as to put the defendant D. L. Hannifin on inquiry as to any defects in the title to NM 3620, or other claims to said lease.

5. The lack of any express warranty of title in the assignment of federal oil and gas lease NM 3620 from the defendant Brown Walker to the defendant D. L. Hannifin was not sufficient cause to place the defendant

D. L. Hannifin on any inquiry as to defects in the title to NM 3620, or other claims to said lease.

6. The information contained in the instruments on record with the Bureau of Land Management as of June 18, 1974, was insufficient to place the defendant D. L. Hannifin on any inquiry as to defects in title to federal oil and gas lease NM 3620 and was insufficient to give him notice that the plaintiffs O'Kane and Millhollen claimed any interest in said lease as of that date.

7. The defendant D. L. Hannifin exercised the ordinary care that a reasonable and prudent person in the oil and gas business would exercise in checking the title to a federal oil and gas lease prior to purchase.

8. The defendant D. L. Hannifin on June 18, 1974, was a good faith bona fide purchaser of federal oil and gas lease NM 3620, and was without notice, either actual or constructive, of any facts which would have put him on inquiry as to any other claims against said federal oil and gas lease.

9. The title of the defendant D. L. Hannifin to said oil and gas lease should be declared superior to any claim to said lease asserted by the plaintiffs O'Kane and Millhollen.

10. The defendant D. L. Hannifin should be declared to owner of record title interest in and to Federal oil and gas lease NM 3620.

11. The Secretary of the Interior of the United States by and through the New Mexico State Office of the Bureau of Land Management should be directed to approve the assignment to D. L. Hannifin from the defendant Brown Walker dated June 18, 1974.

*Issue*

O'Kane challenges conclusion No. 8, i. e., that Hannifin "was a good faith bona fide

3. 19 IBLA 171.

purchaser * * * without notice, either actual or constructive, of any facts which would have put him on inquiry * * *."

## OPINION

■ New Mexico law is controlling in this diversity jurisdiction case. *Erie R. R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The absence of federal statute governing this type of private dispute regarding rights to federal oil and gas leases further requires that state law shall govern. *Bolack v. Underwood,* 340 F.2d 816, 820 (10th Cir. 1966).

■ Under New Mexico law, an oil and gas lease is an interest in real property. *Bolack v. Underwood, supra; Rock Island Oil & Refining Co. v. Simmons,* 73 N.M. 142, 386 P.2d 239 (1963).

Sec. 71–2–3 of the New Mexico Statutes Annotated (1953) provides:

71–2–3. Unrecorded instruments—Effect.—No deed, mortgage or other instrument in writing, not recorded in accordance with section 4786 [71–2–1], shall affect the title or rights to, in any real estate, of any purchaser, mortgagee in good faith, or judgment lien creditor, without knowledge of the existence of such unrecorded instruments.

And § 71–2–1, N.M.S.A. (1953), provides:

71–2–1. Recording deeds, mortgages and patents.—All deeds, mortgages, United States patents and other writings affecting the title to real estate, shall be recorded in the office of the county clerk of the county or counties in which the real estate affected thereby is situated.

In the instant case, none of the instruments in the chain of title for lease NM 3620 had been recorded in the office of the county clerk on June 18, 1974, the day Hannifin acquired title. Therefore, the question is whether, under § 71–2–3, N.M.S.A. (1950), Hannifin was a "purchaser * * * in good faith * * * without knowledge of the existence of such unrecorded instruments." The "unrecorded instrument" in this case is conveyance (5), the assignment from Walker to Doreen Smith of December 13, 1971, of which Hannifin had no actual knowledge on June 18, 1974, and which was not filed at BLM until July 16, 1974.

With respect to the meaning of "knowledge" in this context, *Gore v. Cone,* 60 N.M. 29, 287 P.2d 229 (1955) refers to the earlier case of *Sawyer v. Barton,* 55 N.M. 479, 236 P.2d 77 (1951) and then states:

The quoted holding is that where facts are brought to the knowledge of the intending purchaser are such nature that in the exercise of ordinary care he ought to inquire, but does not, his failure so to do amounts to gross or culpable negligence, and he will be charged with knowledge of all facts which the inquiry, pursued with reasonable diligence, would have revealed. [60 N.M. at 34, 287 P.2d at 234.]

Thus, the issue is whether Hannifin had implied knowledge and the test is whether he exercised the ordinary care of a purchaser of a federal oil and gas lease. The burden was on O'Kane, under New Mexico law, to show that Hannifin had "knowledge" within the meaning of § 71–2–3, N.M.S.A. In *Archuleta v. Landers,* 67 N.M. 422, 427, 356 P.2d 443, 448 (1960), an action to quiet title for land, the Supreme Court of New Mexico stated: "The rule is so well established as to need no citation of authority, that there is a presumption that consideration was paid and that the purchaser acted in good faith."

O'Kane makes four arguments: (1) the price paid was "so unreasonably low" that it created a "duty of further inquiry;" (2) Hannifin did not "give value;" (3) the BLM records were sufficient to create a "duty of inquiry;" and, (4) Walker's statement that the assignment would be without warranty was sufficient to create a "duty of further inquiry." We find no merit in O'Kane's arguments.

Arguments (1) and (2) must fail, in view of the record evidence supporting the district court's finding that the fair market value of lease NM 3620 on June 18, 1974 (with only 3½ years remaining in the lease term) was within a *range* of $15 to $50 per acre. Thus, the price of $15 per acre was simply at the low end of the range. The

fact that a range exists merely reflects the speculative nature of investments in oil and gas leases, such as NM 3620.[4] The district court's conclusion is not rendered erroneous by the price paid or value given by Hannifin.

O'Kane's argument (3), that the BLM records were sufficient to charge Hannifin with a duty of inquiry, is an argument that Hannifin's "duty" was not just to inquire into the BLM records as they stood, but to inquire *further* into matters not of record at the BLM. Whether, under some circumstances, the condition of the BLM record could raise such a duty of "further inquiry," we need not decide. It is clear that no such further duty was created in the present case.

Having engaged abstractor Schutz and having found record title in Walker, Hannifin's duty of inquiry in this case came to an end. As this court noted in *Southwestern Petroleum Corp. v. Udall,* 361 F.2d 650 (10th Cir. 1966), "[t]he use of the Land Office [BLM] records for title search must be recognized" for "[o]therwise a premium would be on negligence and studied ignorance." (*Id.* at 657.)

O'Kane was necessarily aware of his rights, of the state of the BLM records, of his having accepted the remitted rental fees, of his right to appeal, of his failure to do so, and of his failure to enter any claim in the BLM records whatever. Moreover, O'Kane took conveyance (6), the assignment from Doreen Smith, when the BLM records showed title in Walker, *not* Smith, for at that time conveyance (5), the assignment from Walker to Smith had not been filed at BLM. Thus, a judgment in favor of O'Kane in the present case would place "a premium * * * on negligence and studied ignorance."

Hannifin testified on cross-examination that he relied on the unappealed (and thus, at that time, final) BLM decision of February 15, 1974, which had declared null and void the approval of conveyance (6), the assignment to O'Kane, because "Their decision was on record" and "I had no reason to [discuss it with Walker]." We find nothing in the BLM records to indicate error in the district court's conclusion that Hannifin exercised ordinary care and thus fully met his duty to inquire in the present case.

O'Kane's argument (4), regarding the absence of warranty of title, is unsound under the facts of this case. The record fully supports the district court's findings that there was no custom or practice in the New Mexico oil and gas industry which required a warranty of title, that the standard BLM assignment form involved here was commonly used to make assignments of federal oil and gas leases in New Mexico, and that it contained no warranty of title. Thus, under these circumstances, Walker's oral statement of no warranty was not unusual; it was, in fact, the expected course of conduct. Hence, the district court's conclusion that Hannifin, in the exercise of ordinary care, would not have been put on notice thereby, is free of error.

In summary, we conclude that Hannifin exercised the ordinary care expected of a purchaser of a federal oil and gas lease. His careful investigation of the BLM records showed record title in Walker, the offeror. Walker's price was low, but not unreasonably so, in view of the short remaining lease term and the highly speculative nature of the investment. Thus, we agree with the district court's conclusion that Hannifin was a bona fide purchaser, without actual or implied knowledge of any facts which would have put him on notice of conveyance (5), the unrecorded assignment to Doreen Smith, or which would have created a further duty to inquire thereinto.

Accordingly, the judgment below is *affirmed.*

---

4. Lease NM 3620 was for land "not within a known geologic structure" of a producing oil or gas field, as determined by the U.S. Geological Survey at the time of lease issuance in 1967.