Joseph A. WINKLER, Appellee and Cross-Appellant,

v.

Cecil ANDRUS, Secretary of the Interior, Appellant and Cross-Appellee,

and

Davis Oil Company and Marvin Davis, Intervenor-Appellant and Cross-Appellee.

Nos. 79–1965, 79–1988, 79–1993, 79–2171 and 79–2172.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted Nov. 28, 1979.

Decided Feb. 1, 1980.

708

Richard C. Dibblee of Roberts, Black & Dibblee, Salt Lake City, Utah, for appellee and cross-appellant.

Joshua I. Schwartz, Dept. of Justice, Washington, D.C. (Sanford Sagalkin, Acting Asst. Atty. Gen., Washington, D.C., Charles Graves, U. S. Atty., Cheyenne, Wyo., Carl Strass and James Tomkovicz, Dept. of Justice, Washington, D.C., of counsel, William R. Murray, Jr., Dept. of the Interior, Washington, D.C., on brief), for appellant and cross-appellee.

Richard H. Bate of Schultz & Bate, Denver, Colo. (Richard F. Pickett and Henry F. Bailey, Jr. of Loomis, Lazear, Wilson & Pickett, Cheyenne, Wyo. and William A. MacNaughton, Gen. Counsel, Davis Oil Co., Houston, Tex., on brief), for intervenor-appellant and cross-appellee.

Before SETH, Chief Judge, and HOLLOWAY and DOYLE, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

These are consolidated appeals from a series of orders entered by the United States District Court for the District of Wyoming subsequent to a prior judgment in this same case which was rendered February 21, 1979. *See Winkler v. Andrus,* 594 F.2d 775 (10th Cir. 1979). The cited case was one in which the parties were Joseph A. Winkler and the Secretary of the Interior. The controversy pertained to a drawing of noncompetitive oil and gas lease offers re-

lating to certain lands in Sublette County, Wyoming. In the case the Wyoming State Office of the Bureau of Land Management (BLM) ruled that even though Joseph A. Winkler was the first drawee, that his entry card had to be rejected because of a name insufficiency. We ruled that this action was contrary to law.

Following this decision, new facts surfaced. The second drawee had been given the lease in the interim. This was A. Lansdale. She had promptly assigned the oil and gas lease to Davis Oil Company. Davis had assigned a portion of the operating rights to Marvin Davis. Now the issue is whether or not Davis Oil Company and Marvin Davis are bona fide purchasers within the meaning of the Mineral Leasing Act, 30 U.S.C. § 184(h)(2) (1976).

Other issues are tendered by the parties and we will mention them, but their determination is not essential to the disposition of this case.

## I.

### THE FACTS WHICH HAVE ARISEN SUBSEQUENT TO THE ORIGINAL PROCEEDINGS

Additional facts have arisen since the case was initially before us, and these affect the above-mentioned dispositive issue which we must address. As previously stated, this drawing was carried out pursuant to the Mineral Leasing Act and the regulations promulgated under that Act. *See* 30 U.S.C. § 226(c) (1976); 43 C.F.R. § 3112 (1978). The first drawn entry card was that of Joseph A. Winkler and, as noted above, this was rejected by the BLM on December 16, 1975, on a basis which this court determined was inadequate. The BLM had claimed that it was confused by the fact that Winkler had used an office stamp in setting forth his address, which referred to "J. A. Winkler Agency." Wink-

ler appealed this rejection through administrative levels within the Department of the Interior to the Interior Board of Land Appeals.

Issuance of the oil and gas lease was suspended as far as the second drawee, Lansdale, was concerned during the pendency of the administrative appeal, pursuant to 43 C.F.R. § 4.21(a) (1978). On April 29, 1976, the IBLA affirmed the rejection of Winkler's card. *Joseph A. Winkler,* 24 I.B. L.A. 380 (1976). Under 43 C.F.R. §§ 4.1(b)(3) and 4.21(c), decisions of the IBLA constitute final agency action for purposes of judicial review under the Administrative Procedure Act, 5 U.S.C. § 704 (1976). Judicial review of IBLA decisions are to be commenced within 90 days after the Department's decision is rendered. 30 U.S.C. § 226–2 (1976). There is no procedure in the public land statutes for staying the effectiveness of the Department's decision, and the Administrative Procedure Act, 5 U.S.C. § 705 (1976) must be utilized in order to accomplish this.

Winkler did not, in commencing his court action, request a preliminary injunction or temporary restraining order to stay issuance of the lease. Nor did Winkler file a lis pendens notice which is necessary under 28 U.S.C. § 1964 (1976) and applicable state law (Wyo.Stat. § 1–6–108) to give constructive notice. The Wyoming State Office of the BLM lacked actual notice of the filing of the case in United States District Court, and it proceeded to issue its oil and gas lease no. W–52387 to Lansdale in accordance with the April 29 IBLA decision.[1]

On July 12, 1976, Lansdale made the mentioned assignment to Davis Oil Company, which in turn executed a drilling agreement with Marvin Davis[2] in which it divided the operating rights between them. The Davis Oil Company is a partnership. There is no evidence that Davis conducted a title

---

1. The reason that the Wyoming State Office of the BLM had no actual knowledge of the case was because it was filed initially in Utah. Whether the Wyoming office had knowledge or not is, however, of no significance. Clearly the *Utah* office knew because it was sued. The

Utah action was subsequently transferred to Wyoming on July 15, 1976.

2. Davis Oil Company and Marvin Davis will be referred to in this opinion collectively as "Davis."

examination of BLM records prior to acquisition of the lease. On July 30, 1976, Davis Oil Company filed the assignment in the Wyoming State Office of the BLM for the purpose of obtaining an approval pursuant to 30 U.S.C. § 187a. By then the Wyoming office had received actual notice of the filing of the suit and it delayed acting on approval of the assignment.[3]

It was not until June 9, 1977 that the BLM notified Davis Oil Company by letter that Winkler had filed a court action and that the district court had rejected his claim. The letter also advised Davis Oil Company that there was a likelihood that the decision of the district court would be appealed and that the BLM office would hold the assignment in its unapproved state until the appeal was resolved. Davis maintains that this letter was the first actual notice that it received that the lease might be subjected to cancellation.

The Wyoming office of the BLM did not await this court's first decision. Indeed, on November 3, 1978, while the case was pending in this court, it approved the assignment and did so retroactive to July 1, 1976. Davis' knowledge as of that date, however, is not controlling. In other words, the actions and commitments which Davis took after the BLM approved the assignment were with full knowledge of the fact that litigation in the first case was going on and that Davis' lease, at the very minimum, stood in the shadow of those proceedings.

The Department recognized belatedly that 30 U.S.C. § 184(h)(2) (1976) would preclude cancellation of the lease to the Davis Oil Company if Davis Oil Company qualified as a bona fide purchaser under the cited section.[4] Once the Department recognized this it proceeded immediately to seek relief in the district court under Rule 60(b)(6) of the Federal Rules of Civil Procedure from this court's earlier mandate. The district court, however, denied this request saying that it was bound by this court's prior decision. Soon thereafter, Davis Oil Company and Marvin Davis sought intervention and also moved for Rule 60(b) relief seeking further proceedings to determine that they were bona fide purchasers within the meaning of 30 U.S.C. § 184(h)(2). The district court certified the question whether Davis was a bona fide purchaser to this court for decision. Subsequently, it entered an order in which it granted Davis' motion to intervene and included in it a finding, which was not based on evidence, that Davis Oil Company and Marvin Davis were bona fide purchasers. After that everybody appealed.

## II.

### THE QUESTION WHETHER DAVIS OIL COMPANY AND MARVIN DAVIS WERE BONA FIDE PURCHASERS WITHIN THE MEANING OF 30 U.S.C. § 184(h)(2)

The trial court has made a finding to the effect that Davis is a bona fide purchaser. It stated its intention to certify the question under 28 U.S.C. § 1292(b) (1976) "and

---

**3.** Both Winkler's counsel and counsel for the Secretary of the Interior apparently proceeded under the mistaken view that BLM approval was necessary to confer rights on the assignee. However, under *Southwestern Petroleum Corp. v. Udall*, 361 F.2d 650, 655–56 (10th Cir. 1966), this court held that third parties may acquire rights as bona fide purchasers under 30 U.S.C. § 184(h)(2) on the day of the assignment. In any event, this explains why the U.S. District Court for Wyoming at the first trial considered only the issue of the correctness of the BLM action in rejecting Winkler's entry card.

**4.** This subsection provides:
The [Secretary's] right to cancel or forfeit for violation of any of the provisions of this chapter shall not apply so as to affect adversely the title or interest of a bona fide purchaser of any lease, interest in a lease, option to acquire a lease or an interest therein, or permit which lease, interest option, or permit was acquired and is held by a qualified person, association, or corporation in conformity with those provisions, even though the holdings of the person, association, or corporation from which the lease, interest, option, or permit was acquired, or of his predecessor in title (including the original lessee of the United States) may have been canceled or forfeited or may be or may have been subject to cancellation or forfeiture for any such violation. . . .
30 U.S.C. § 184(h)(2) (1976).

then let [the Tenth Circuit Court of Appeals] decide who is entitled to this lease because I can't reverse the Court of Appeals," and "That doesn't mean I am approving [Davis'] lease. I am going to let the Court of Appeals decide that issue." The Secretary in its brief states that the district court did not really intend to rule on this issue.

█ In order to have complied with the prior mandate of this court, the Secretary would have been required to cancel the Lansdale lease. The Secretary has broad authority to cancel oil and gas leases for violations of the Mineral Leasing Act and regulations thereunder, as well as for administrative errors committed before the lease was issued. *See* 30 U.S.C. §§ 184(a)(1), 188(a), 188(b) (1976); 43 C.F.R. §§ 3108.2–3, 3108.3; *Boesch v. Udall*, 373 U.S. 472, 83 S.Ct. 1373, 10 L.Ed.2d 491 (1963). The Secretary's authority is limited by 30 U.S.C. § 184(h)(2) (1976), the so-called bona fide purchaser amendment to the Mineral Leasing Act. This section provides:

> The [Secretary of the Interior's] right to cancel or forfeit for violation of any of the provisions of this chapter shall not apply so as to affect adversely the title or interest of a bona fide purchaser of any lease, interest in a lease, option to acquire a lease or an interest therein, or permit which lease, interest, option, or permit was acquired and is held by a qualified person, association, or corporation in conformity with those provisions, even though the holdings of the person, association, or corporation from which the lease, interest, option, or permit was acquired, or of his predecessor in title (including the original lessee of the United States) may have been cancelled or forfeited or may be or may have been subject to cancellation or forfeiture for any such violation. . . .

This provision was added as an amendment to the Mineral Leasing Act in 1959 to protect bona fide purchasers of federal oil and gas leases who acquired their holdings in good faith from the possible consequences of Mineral Leasing Act violations by their predecessors in title. The measure was intended to foster development of oil and gas resources on public lands and to protect innocent investors and operators. H.Rep. No. 1062, 86th Cong., 1st Sess., *reprinted* in [1959] U.S. Code Cong. & Admin.News, pp. 2620, 2621. The same limitation on the Secretary's authority to cancel oil and gas leases appears in 43 C.F.R. § 3102.1–2 (1978).

The definitive case is an opinion of this court rendered in 1966, *Southwestern Petroleum Corp. v. Udall*, 361 F.2d 650 (10th Cir. 1966). The court there stated that whether or not a party qualifies as a bona fide purchaser within 30 U.S.C. § 184(h)(2) depends on common law standards. On this it was said:

> [O]ne claiming to be a bona fide purchaser must not have been involved in or have knowledge of any fraud or violation of any of the provisions or regulations of the Mineral Leasing Act by his predecessor in title. . . . The basic criterion . . . [is] . . . . whether the person asserting he is a bona fide purchaser, and who has shown that value has been paid for his interest, has acted in good faith. . . [H]e must have acquired his interest in good faith, for valuable consideration, and without notice of the violation of the departmental regulations.

361 F.2d at 656.

The above standards are then controlling factors in ascertaining whether Davis Oil Company and Marvin Davis qualify as bona fide purchasers.

█ In *Southwestern Petroleum*, the BLM had issued a noncompetitive oil and gas lease to the *first* qualified applicant who then proceeded to assign the lease to one Ralph Lowe. Later the Bureau cancelled the lease on the ground that it was in violation of minimum acreage requirements. The second qualified applicant was Southwestern Petroleum Corp., which company sought to obtain the lease. However, Lowe was held to have been a bona fide purchaser. The court, in determining whether Lowe, who purchased from the first applicant, was a bona fide purchaser,

stated that an assignment need not have been approved by the BLM in order to entitle an assignee to the protection of the bona fide purchaser amendment. Instead it was the date of the assignment which was critical as to the bona fides of the assignee. *See Southwestern Petroleum Corp. v. Udall, supra,* 361 F.2d at 655–56. Thus, in determining whether Davis was a good faith purchaser the determination date is the date of the assignment, that is, July 12, 1976.

Winkler maintains that July 26, 1976 constituted the relevant date since it was then that the consideration for the assignment was paid. This is the general rule. *See* 77 Am.Jur.2d *Vendor & Purchaser* § 706 (1975). However, whether it is July 12 or July 26, 1976 is unimportant.

We note that the record does not disclose that Davis had any actual notice that Winkler had filed a federal court action seeking review of the decision of the Secretary until June 9, 1977.

■ Under 28 U.S.C. § 1964, where parties in a federal court action claim an interest in real property which is located in a state which has a lis pendens statute, there must be compliance with that statute in order to give constructive notice of the federal court action.[5] Wyoming law provides that an interest in a federal oil and gas lease is an interest in real property for this present purpose. *Dame v. Mileski,* 80 Wyo. 156, 340 P.2d 205 (1959). *See Denver Joint Stock Land Bank of Denver v. Dixon,* 57 Wyo. 523, 122 P.2d 842, 140 A.L.R. 1270 (1942); *Montana & Wyoming Oil & Gas v. Gibson,* 19 Wyo. 1, 113 P. 784 (1911). Also, Wyoming has a statute which authorizes the recording of lis pendens notices of federal district court actions. *See* Wyo.Stat. § 1–6–108 (1977). In order then for Wink-

ler to have subjected Davis Oil Company to constructive notice of the filing of the federal suit, it was necessary for Winkler to have filed a lis pendens notice in Sublette County, Wyoming in accordance with the requirements of federal and Wyoming law. Winkler did not file such a lis pendens notice at any time and hence notice of the filing of the action in court was not given.

There remains the question whether Davis was otherwise subject to constructive knowledge of Winkler's claim, knowledge of such character that it would be capable of Davis losing its status as a bona fide purchaser under § 184(h)(2) (1976).

### III.

### THE ISSUE AS TO CARE EXERCISED BY DAVIS

In *Southwestern Petroleum Corp. v. Udall, supra,* 361 F.2d at 657, the test as to imputing notice of a superior right is whether facts are sufficient to put an ordinarily prudent man on inquiry, an inquiry which, if followed with reasonable diligence, would lead to discovery of defects in title affecting the property. The court goes on to say that the test is not what an extremely cautious person might do, but what a prudent one should do. The standard is thus quite similar to the negligence test.

■ Davis maintains that Winkler waived his rights by failing to request a stay under the Administrative Procedure Act, § 705, and by failing to file a lis pendens notice pursuant to 28 U.S.C. § 1964. This, however, is not the answer to our present problem. Our inquiry is whether Davis exercised the ordinary care and diligence of a reasonably prudent investor in the oil and gas business in taking the

---

5. Section 1964 provides as follows:

Where the law of a State requires a notice of an action concerning real property pending in a court of the State to be registered, recorded, docketed, or indexed in a particular manner, or in a certain office or county or parish in order to give constructive notice of the action as it relates to the real property, and such law authorizes a notice of an action

concerning real property pending in a United States district court to be registered, recorded, docketed, or indexed in the same manner, or in the same place, those requirements of the State law must be complied with in order to give constructive notice of such an action pending in a United States district court as it relates to real property in such State.

assignment from Lansdale on July 12, 1976, without conducting a title examination of BLM records prior to taking the assignment. As to this, Davis maintains that it is not customary for the purchaser of a federal oil and gas lease to obtain a title opinion unless a large cash payment is involved. No such condition is imposed by the cases. *See Southwestern Petroleum v. Udall, supra,* and *O'Kane v. Walker,* 561 F.2d 207 (10th Cir. 1977). Both of the cited cases recognize that examination of BLM records must be made for an assignee of a federal mineral lease to be protected as a bona fide purchaser. Otherwise, the assignee runs the risks which flow from failure to do so. In *Southwestern Petroleum,* the court said:

The bona fide purchaser amendment . . . necessarily contemplates some inquiry be made into the records pertaining to title. Otherwise a premium would be on negligence and studied ignorance. *Gabbs Exploration Co. v. Udall,* 114 U.S.App.D.C. 291, 315 F.2d 37 [1963, cert. denied 375 U.S. 822, 84 S.Ct. 61, 11 L.Ed.2d 56 (1964)]; *Krueger v. United States,* 246 U.S. 69, 38 S.Ct. 262, 62 L.Ed. 582 [1918]; 30 U.S.C. § 184(h)(3). The use of the Land Office records for title search must be recognized. We hold that Lowe in taking an assignment of a federal oil and gas lease could presume regularity in the issuance of the lease where the Land Office serial pages, tract book, and plat (not master plats) show the particular lands to be available for leasing and the particular lease to be in good standing.

*Southwestern Petroleum Corp. v. Udall, supra,* 361 F.2d at 657.

As we view it then, the requirement is neither extensive nor onerous. Assignees are not required to go outside the records relating to the particular parcel of land assigned, which records are kept in the BLM state office. This court acknowledged that a too onerous title search would place too heavy a burden and would defeat the purpose of the bona fide purchaser amendment. *Id.* at 656–57. On the facts that were presented to it the *Southwestern* court concluded that the BLM records did not furnish to the purchaser Lowe notice that

Southwestern had a conflicting claim inasmuch as Southwestern was junior to Lowe's assignor. The court commented that "Southwestern had taken no steps to initiate administrative action, or to otherwise put Lowe on notice, until long after the assignment to Lowe." *Id.* at 657. From this it is inferable that the court might not have ruled that Lowe was a bona fide purchaser had the records revealed the existence of administrative proceedings initiated by Southwestern.

The case of *O'Kane v. Walker,* 561 F.2d 207 (10th Cir. 1977), also considered the proper standard of diligence which must be exercised by purchasers of oil and gas leases. In *O'Kane,* this court affirmed a decision of the district court holding that a subsequent assignee qualified for priority over an earlier assignee for the same federal oil and gas lease as a bona fide purchaser under the law of New Mexico. The records in the *O'Kane* file revealed that the agency had revoked approval of the earlier assignment and had notified the assignee of his right to appeal. The earlier assignee had not taken an appeal and had filed no other notice with the BLM showing that he was claiming an interest in the subject lease. This court ruled that the subsequent assignee had fulfilled his duty by engaging an abstractor specializing in federal oil and gas records to examine the BLM records and to provide an oral summary of the history of the lease. This examination showed that the title was in the hands of the subsequent assignee's assignor. Another factor present in *O'Kane* was that the time period allowed for taking an appeal of the agency's revocation of the earlier assignment had passed.

■ The teachings of *Southwestern,* all of which are followed in *O'Kane,* are that assignees of federal oil and gas leases who seek to qualify as bona fide purchasers are deemed to have constructive notice of all of the BLM records pertaining to the lease at the time of the assignment. What are the lessons which apply to the present case? Part of the record is an affidavit of Glenna M. Lane, Chief of the Oil and Gas Section

of the Wyoming State Office of the BLM, which affidavit states that at the time that Davis took the assignment, "there was nothing in the official BLM file to indicate that A. Lansdale was not entitled to hold the lease, or that her offer was defective in any manner." The BLM file pertaining to oil and gas lease no. W–52387 is also part of the record of this case. It includes a copy of the notice to Winkler that BLM had rejected his entry card together with the record of the IBLA proceedings initiated by Winkler. We assume that these items were in the file as of July 12, 1976. So, while BLM records contain the conclusion that Lansdale was entitled to the lease in that she had prevailed in an administrative contest, the BLM records also indicate that Lansdale was not the first drawee, but was the second; that the first drawn card had been rejected by the BLM office, and that the first drawee, Winkler, had unsuccessfully contested the agency action. Davis Oil Company, in addition to having constructive knowledge of all of these facts, was presumed to have known that the applicable statute, 30 U.S.C. § 226–2, gave Winkler 90 days within which to bring an action for judicial review of the IBLA decision. As of the crucial date, the 90–day period had not gone by.

The crucial issue, then, is whether Davis' constructive knowledge as to the existence of administrative proceedings involving a contest between Winkler and Davis' assignor, together with the knowledge that the 90–day period had not run out—in other words, Davis' constructive knowledge that Winkler's status as first drawee was at least a fighting or viable issue—serves to disqualify Davis from the status of bona fide purchaser under the applicable statute, 30 U.S.C. § 184(b)(2). The problem is complicated by the fact that the trial court did not address this question in the evidence or

the authorities that would solve the problem created by the facts. Evidence was not taken and there was not an analysis of the facts basic to this conflict between Winkler and Davis. The trial court thus has eschewed the facts and the issue.

■ Generally speaking, the one who deals with property while it is in litigation does so at his own peril. *See* 51 Am.Jur.2d, *Lis Pendens* §§ 1, 39 (1970). *See also Wilkin v. Shell Oil Co.,* 197 F.2d 42, 49 (10th Cir. 1951), *cert. denied,* 344 U.S. 854, 73 S.Ct. 92, 97 L.Ed. 663 (1952); 54 C.J.S. *Lis Pendens* §§ 1a, 36c (1948). We have considered whether the presence of administrative proceedings is notice that a lawsuit is pending, and the majority rule is that a lawsuit is determined pending throughout the time in which appellate review of the original judgment may be taken. *See Wilkin v. Shell Oil Co., supra,* 197 F.2d at 50.[6]

■ Finally, the trial court would have us conduct the evaluation and render a decision on the issue of Davis' bona fides. Our view is that this would be improper. The question here is one of evaluation of the facts and drawing of a legal conclusion therefrom, and this, in the first instance at least, is a task which is to be carried out by the trial court. Furthermore, there is no real assurance that all of the facts are in. In view of the nature of the determination to be made, and considering also the fact that the trial court has not previously addressed this issue and made this evaluation, we believe that there should be remand for further proceedings. The task of the trial court is, of course, to examine the documents in the BLM file which were in the file as of July 12, 1976. The court is to evaluate the contents of these documents in terms of whether a reasonably prudent operator would, from reading them, be put on notice that a conflict which is ongoing ex-

---

6. *See also Ashworth v. Hankins,* 241 Ark. 629, 408 S.W.2d 871 (1966); *Pearson v. Logan,* 208 Okl. 234, 255 P.2d 255, 258 (1953); *Carl v. DeToffol,* 223 Minn. 24, 25 N.W.2d 479, 483 (1946); *Maedel v. Wies,* 309 Mich. 424, 15 N.W.2d 692, 694 (1944); *Stuart v. Coleman,* 78 Okl. 81, 188 P. 1063, 10 A.L.R. 411 (1920).

The effect of these cases is that one who purchases property after a *nisi prius* judgment has been entered takes the property subject to any changes affecting his title that may take place on appeal.

\*　　\*　　\*

isted. Could he, in other words, from reading these documents, believe that the particular lands were available for leasing and that the particular lease was in good standing. *See Southwestern Petroleum Corp. v. Udall, supra*, 361 F.2d at 657. The above is another way of stating the test which is set forth in *Southwestern*, that is, whether Davis exercised the ordinary care and diligence of a reasonably prudent investor in the oil and gas business in taking the assignment from Lansdale on July 12, 1976.

We have considered the other issues that have been presented to us such as the failure of the court to entertain the Rule 60(b) motions, the petition of Winkler seeking to hold the Secretary of Interior in contempt, and the propriety of the court's allowing the intervention on the part of the Davis Company, and we continue to be of the opinion that the only remaining vital issue is that which we have treated, the bona fide purchaser issue.

The judgment of the district court is reversed and the cause is remanded for further proceedings consistent with the views expressed herein.