Joseph A. WINKLER, Plaintiff,

v.

Cecil ANDRUS, Defendant,

and

Davis Oil Company and Marvin Davis, Intervenors.

No. C76–127K.

United States District Court, D. Wyoming.

Aug. 5, 1980.

Richard C. Dibblee and Wayne L. Black, Salt Lake City, Utah, for plaintiff.

Charles E. Graves, U. S. Atty., Cheyenne, Wyo., for Dist. of Wyoming.

Harold J. Baer, Dept. of Interior, Denver, Colo. for defendant.

Richard H. Bate, Denver, Colo., William A. MacNaughton, Houston, Tex. and Henry F. Bailey, Jr., Cheyenne, Wyo., for intervenors.

### MEMORANDUM OPINION

KERR, District Judge.

This controversy first arose over a drawing for a noncompetitive oil and gas lease. Joseph A. Winkler (Winkler) was the first drawee for lease # W–52387. The Wyoming Office of the Bureau of Land Management (BLM) ruled that, even though Winkler was the first drawee, his entry card had to be rejected because it was stamped "J.A. Winkler Agency" and Winkler had not complied with the necessary requirements for corporations, partnerships and associations under the regulations. In an April 29, 1976 opinion, the Interior Board of Land Appeals (IBLA) affirmed the Wyoming Office of the BLM. Joseph A. Winkler, 24 IBLA 380 (1976). The decision of the IBLA is considered to be final for purposes of the Administrative Procedure Act. 5 U.S.C. § 704; 43 C.F.R. §§ 4.1(b)(3) and 4.21(c). Upon final entry of the decision by the IBLA, judicial review must be commenced within 90 days. Winkler filed his request for review in the Utah district court. Such an action was clearly erroneous due to the fact that the lands covered by the lease were located in Wyoming. The Utah district court recognized the venue error and transferred the case to the Wyoming district court on July 15, 1976.

The public lands statutes do not provide a method to "stay" the proceedings of the IBLA once a decision is rendered. A request for a preliminary injunction, a temporary restraining order or a stay from the federal district court is the proper proce-

dure. Winkler did not request a preliminary injunction, a temporary restraining order, or a stay when he commenced his court action in Utah or Wyoming. A lis pendens notice under federal and state law, 28 U.S.C. § 1964 and Wyo.Stat. § 1–6–108, was not filed. As a result, the Wyoming State Office of the BLM had no constructive notice of the appeal. The State BLM Office also lacked actual notice of the appeal and issued the lease to Lansdale, the second drawee, pursuant to the April 29, 1976 IBLA decision.

On July 12, 1976 Lansdale assigned her interest in the lease to Davis Oil Company. Davis Oil Company divided the interest in the lease between the Davis Oil Company and Marvin Davis in a drilling agreement. Davis Oil Company and Marvin Davis will be referred to collectively as Davis for the remainder of this opinion.

Pursuant to 30 U.S.C. § 187a, Davis filed the assignment with the Wyoming State Office of the BLM for approval on July 30, 1976. At this point, the Wyoming Office had notice of the suit appealing the IBLA decision and they delayed the approval of the assignment. In a decision rendered on June 20, 1977, this court affirmed the IBLA decision. The Court of Appeals for the Tenth Circuit remanded and ordered that the BLM issue the lease to the first drawee, Winkler. Belatedly, the BLM discovered that the bona fide purchaser amendment to the Mineral Leasing Act, 30 U.S.C. § 184(h)(2) prevented cancellation of the lease if Davis was determined to be a bona fide purchaser. Upon application to this court for relief, this court certified the question of whether Davis was a bona fide purchaser to the Tenth Circuit Court of Appeals. The Tenth Circuit Court of Appeals remanded the case to this court for the determination of whether Davis was a bona fide purchaser.

The sole issue to be determined by this court in the disposition of this case is simply stated by the Tenth Circuit:

The crucial issue, then, is whether Davis' constructive knowledge as to the existence of administrative proceedings involving a contest between Winkler and Davis' assignor, together with the knowledge that the 90-day period had not run out—in other words, Davis' constructive knowledge that Winkler's status as first drawee was at least a fighting or viable issue—serves to disqualify Davis from the status of bona fide purchaser under the applicable statute, 30 U.S.C. § 184(b)(2).

Rusty Linnen, a land man for Davis, negotiated the purchase of lease # W–52387 from Lansdale, the second drawee. At the time of the assignment, Lansdale informed Linnen of the IBLA decision but said she assumed everything was settled because the Wyoming State Office of the BLM had issued the lease to her. Linnen called the Wyoming BLM to affirm that the lease had issued to Lansdale. This fact was confirmed for him by the Wyoming BLM Office. Linnen took no further action claiming that the lease was "inventory acreage". He did not check the BLM case file although he did check the lease serial sheet. Linnen stated that his procedure was routine for leases acquired for inventory acreage and that the procedure was used by Davis and by Sinclair Oil Company, his former employer. The assumption was made by Linnen that the BLM would not have issued the lease if the suit had not been settled.

■ Davis is charged with the knowledge of the contents of the BLM file as of July 12, 1976 and with the knowledge that 30 U.S.C. § 226–2 gave Winkler, the first drawee, 90 days to bring an action for judicial review of the IBLA decision. *Winkler v. Andrus*, 614 F.2d 707 (10th Cir. 1980).

This court is governed by the test describing bona fide purchasers as enunciated in *Southwestern Petroleum Corp. v. Udall*, 361 F.2d 650 (10th Cir. 1966). In *Southwestern*, the definition of a bona fide purchaser is taken from the common law. The court in *Southwestern* went on to state that a bona fide purchaser "must have acquired his interest in good faith, for valuable consideration, and without notice of the violation of departmental regulations."

The record does not disclose that Davis had actual or constructive notice that Winkler had filed an appeal. The Wyoming State BLM had not been sued because Winkler had filed his appeal action in Utah. The lis pendens statutes on the federal and state level, 28 U.S.C. § 1964 and Wyo.Stat. 1–6–108, had not been complied with so that Davis had no constructive notice of Winkler's appeal.

Davis did, however, have knowledge of the administrative proceedings and that the 90 day appeal period from the IBLA decision had not expired.

Linnen, the land man for Davis, stated that he had not checked the BLM case file because it was unnecessary as the lease was not considered to be particularly valuable. The fact that the lease was not considered valuable misses the true issue of the case. A survey of the case law indicates no requirement that the lease in question be particularly valuable. *Winkler v. Andrus,* supra.

■ The question before this court is whether or not Davis exercised the ordinary care and prudence of a reasonably prudent investor in the oil and gas business in taking the assignment from Lansdale without checking the case file or allowing the 90 day appeal period to lapse. *Southwestern Petroleum Corp. v. Udall,* supra. The court concludes that Davis did not so act.

Regardless of the importance, or lack thereof, of the lease to Davis, the failure to check the BLM case file clearly indicates that Davis assumed the risk that the lease would be cancelled. *Winkler v. Andrus,* supra; *O'Kane v. Walker,* 561 F.2d 207 (10th Cir. 1977). The knowledge to be gained by Davis from reading the file on July 12, 1976 would have told Davis that the IBLA decision was final on April 29, 1976 and that the appeal time was 90 days. Davis would have had to wait for approximately two weeks for the time period to expire.

Linnen testified that it would have been possible to use a 30 day sight draft for the payment on the assignment but that such a method was considered to be unnecessary. Davis should not benefit by their failure to act reasonably and prudently. Contrary to the arguments of Davis, waiting for two weeks or using a 30 day sight draft would not be the methods of an extremely cautious investor but would instead be the actions of a reasonable and prudent investor.

Davis further argues that such a rule would hinder the acquisition of leases due to the fact that some competitors would be willing to assume the risk to get the lease. The court does not find this argument persuasive because all of the competitors would be on equal footing. One of the basic tenets of the free enterprise system states that the greater the risk, the greater is the chance for a high return. Davis would have to take a chance along with everyone else. The court notes in passing that Davis did not care enough about this lease to check the case file and yet would still attempt to evoke this court's protection from other competitors. Such an anomalous position is unacceptable. Davis is hardly an unsophisticated, small-time investor.

One further question remains. Charged with the knowledge that the appeal period had not yet expired, could such knowledge mean that the action was still viable and ongoing? The court has so held in *Wilkin v. Shell Oil Co.,* 197 F.2d 42 (10th Cir. 1951). In *Winkler v. Andrus,* supra, the court stated:

> We have considered whether the presence of administrative proceedings is notice that a lawsuit is pending, and the majority rule is that a lawsuit is determined pending throughout the time in which appellate review of the original judgment may be taken.

■ Although the actions of the Wyoming State Office of the BLM in issuing the lease prior to the termination of the 90 day appeal period and the misdirected efforts of Winkler in filing his appeal in Utah and failing to file a stay or notice of lis pendens in this district cannot be condoned by this court, such actions do not change the fact that Davis is not a bona fide purchaser within the meaning of 30 U.S.C. § 184(b)(2), and this court so holds.

A reasonably prudent investor in good faith would have read the BLM file and would have made a determination that the lease was issued during a period of time after which an appeal could have been taken from a decision of the IBLA. If the lease had been issued before the expiration of the appeal period, as in the present case, a reasonably prudent investor in good faith would have taken some action to protect itself for the remainder of the appeal period.

This Memorandum Opinion constitutes the Findings of Fact and Conclusions of Law and additional findings and conclusions are unnecessary.

Judgment will be entered in accordance with this Memorandum Opinion.